UNITED STATES of America, Plaintiff,

v.

Louis SERAFINI, et al., Defendants.

Civ. A. No. 86–1591.

United States District Court,
M.D. Pennsylvania.

Jan. 3, 1989.

See also, 706 F.Supp 346; see also, —— F.Supp. ——.

Bruce Brandler, Asst. U.S. Atty., Scranton, Pa., Robert R. Kuehn, Steven R. Baer, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, James Dougherty, Office of Enforcement & Compliance Monitoring–Waste, U.S. Environmental Agency, Washington, D.C., for U.S.

David J. Rinaldi, Scranton, Pa., for O.S. C. Co., J.C. Baumann, D. Bridy, C.E. Rinal-

di, Trustee for C.A. Fisher, A.J. Rinaldi and D.J. Rinaldi.

Brian J. Cali, Robert A. Cecchini, Scranton, Pa., for Louis Serafini, Alfred Bernabei, Ernest Buttafoco, Michael J. Naples, Jr., individually and t/a Empire Contract. Co.

Allan J. Topol, Richard J. DeSanti, Covington & Burling, Washington, D.C., for American Can Co.

## MEMORANDUM

CALDWELL, District Judge.

Now pending for disposition is the City of Scranton's September 2, 1988, motion for relief from judgment and for leave to withdraw deemed admissions. For the reasons set forth below, the city's motion will be denied.

On September 25, 1987, the court granted the United States' motion for partial summary judgment on liability against Scranton. As of that date the city, though represented by counsel, had not filed an answer to the complaint, responded to discovery requests or opposed the summary judgment motion. In accordance with Fed. R.Civ.P. 36, the court ruled that the facts set forth by the government in its unanswered requests for admissions were conclusively established for the purposes of this litigation. On the basis of those facts, as well as the voluminous material filed in support of the motion, the court entered judgment on liability against the city.

■ Citing *Carter v. Albert Einstein Medical Center*, 804 F.2d 805, 807 (3d Cir. 1986), and *Boughner v. Secretary of Health, Education and Welfare*, 572 F.2d 976, 978–79 (3d Cir.1978), the city argues that the court should set aside the judgment under Fed.R.Civ.P. 60(b)(6) on the ground that its attorneys' conduct constituted neglect so gross that it is inexcusable. The government asserts that Rule 60 does not apply because it provides for relief only from a "final" judgment or order and the court's September 25, 1987, order was interlocutory in nature. Although we agree with the United States we need not dwell on that distinction because in any event we retain inherent power to reconsider interlocutory orders when it is consonant with justice to do so. *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir.1973). Furthermore, the considerations under Rule 60 and under the court's inherent power are similar.

■ According to the city, it failed to answer the complaint, respond to discovery requests and oppose the United States' motion for summary judgment because of the negligence of assistant city solicitor Gregory Germain. Following Scranton's receipt of the complaint, Germain filed a motion for an extension of time within which to answer the complaint and thereby became listed as counsel of record. Soon thereafter, Germain, who at that time was legal counsel to the city's Office of Economic and Community Development (OECD), allegedly assumed that OECD legal matters had become his sole responsibility and expected the instant case would be reassigned to another city solicitor. Germain's alleged assumption was incorrect.

On January 25, 1988, Robert Gownley was named Acting City Solicitor. He engaged outside counsel to represent the city in this matter and ordered a search of city archives and records to determine if there was any factual basis to the United States' claim that Scranton was liable for CERCLA response costs at the Taylor Borough site. According to Gownley, the search disclosed no evidence that hazardous substances were disposed of at the site between May 3, 1967, and March 31, 1968, when the city leased a portion of it. The results of that search prompted the city to file the motion currently under consideration. Scranton contends that it never intended not to defend this lawsuit and that were it not for the failure of the solicitor's office to keep its defense on track, summary judgment would not have been entered against it.

The United States challenges the city's claim that Germain's neglect is the sole cause of its current problem. The government has submitted several affidavits which demonstrate that senior city officials

were aware of and were involved in this lawsuit from before it was filed until summary judgment was entered. On September 9, 1986, prior to the filing of the complaint, Robert Kuehn, the original Justice Department attorney assigned to this case, sent a demand letter to the Mayor of Scranton informing him that the United States was preparing to file suit to recover response costs in connection with the Taylor Borough site. The letter invited the mayor to engage in discussions that might lead to the entry of a consent decree. In response, David Miller, the City Solicitor, called Kuehn to inform him that he had received a copy of the letter, was interested in discussing the case and was assigning Germain to handle the matter. Kuehn spoke with Germain on several occasions both before and after the filing of the complaint on November 10, 1986.

On November 10, 1986, Kuehn, Miller, Germain, city engineer Don King and Patricia Tan, the EPA's project supervisor at the Taylor Borough site, participated in a telephone conference to discuss settlement of the case. The following day, Germain told Kuehn that Miller had refused the government's proposal. Near the end of November, 1986, Tan went to Scranton and discussed settlement with Miller, Germain and engineer John Lucianni. She also met with the mayor and discussed the case with him. On December 15, 1986, Germain told Kuehn that the mayor and city solicitor refused to allow him to agree to the United States' settlement proposal, and that he had been instructed to do further work on the case.

On April 8, 1987, Benjamin Fisherow, the Justice Department attorney presently handling this case, called city solicitor Miller and told him that the city's answer was past due, that the city had not met the court's March 31, 1987, deadline for answering, and that the city had not responded to discovery. Miller told Fisherow that he was familiar with the case, that it had been assigned to one of his assistants, and that he would direct the assistant to call Fisherow. Shortly thereafter Germain attempted to call Fisherow.

After the court entered summary judgment on September 25, 1987, Germain telephoned Bruce Brandler, the Assistant United States Attorney assigned to the case. In that conversation Germain did not assert that the case had "fallen between the cracks" as .Gownley now contends. Instead, Germain told Brandler that the city chose not to defend the lawsuit because after evaluating the case, Germain felt the city had an indefensible position. Germain also called Fisherow in order to discuss the possibility of the city performing the remedial activities at the site, as the government had proposed previously during settlement negotiations. Again Germain made no mention of mistake, administrative mix-up or new responsibilities.

■ Based upon the facts recited in the government's affidavits, we have determined that the city's motion should be denied. Though the conduct of one's attorney is, under certain circumstances, grounds for granting relief from a judgment or order, before doing so, the courts generally require the presence of extraordinary circumstances. *See Moolenaar v. Government of the Virgin Islands,* 822 F.2d 1342 (3d Cir.1987) (citing numerous cases). This case does not present such circumstances.

The city argues that the Third Circuit Court of Appeals regularly has relieved parties of adverse judgments where the judgments resulted from attorneys' inexcusable neglectful conduct. Contrary to the city's assertions, we find no evidence of neglect in this case. The affidavits and other materials submitted by the United States amply demonstrate that the city solicitor's office was well aware of the status of this action at all relevant times. The only "evidence" to the contrary is found in the Gownley affidavit, which we reject on several grounds. First, Gownley did not take office until January 28, 1988, long after the events at issue occurred. Thus he has no first hand knowledge of those events. Second, nothing in his affidavit or

in the record explains the basis for his statement that Germain "assumed that OECD matters had become his sole responsibility, and expected that the *Serafini* cases would be reassigned to another assistant city solicitor." Furthermore, after summary judgment was entered, it was Germain who attempted to reopen negotiations with the government, thus indicating that he was handling the case.

In light of the numerous oral and written notices sent not only to Germain, but also to Miller, it is difficult to understand how the city solicitor's office could have overlooked this matter. From the record before the court, it appears that the city solicitor's office made a conscious decision, based upon its assessment of the case, not to defend against the United States' lawsuit. The fact that that decision may have been ill-advised does not justify relieving the city from liability.

Even if we consider this case as one involving attorney negligence, our ultimate conclusion that the city is not entitled to relief from judgment remains unchanged. In *Scarborough v. Eubanks*, 747 F.2d 871, 875–77 (3d Cir.1984), the court discussed the factors a district court should weigh in considering whether to dismiss a complaint as a sanction for an attorney's neglect: (1) the extent of the party's personal responsibility; (2) a history of dilatoriness; (3) whether the attorney's conduct was willful and in bad faith; (4) the meritoriousness of the claim; (5) prejudice to the other party; and (6) alternative sanctions. Those factors have equal applicability to a case involving a summary judgment entered because of an attorney's neglect.

█ Our analysis of the facts of this case under the *Scarborough* criteria centers on the meritoriousness of the city's defense. Scranton claims that except for its deemed admissions, there is no evidence in the record that it leased the Taylor landfill during a period in which hazardous wastes were deposited there. The city's assertion is without merit. According to the Industrial and Agricultural Solid Waste Inventory conducted by the Commonwealth of Pennsylvania in 1968, and the affidavit of William Williams, Fitchburg Coated Products, Inc., sent hazardous substances to the site during the term of the city's operation. Traces of some of those substances have been found at the site during the course of the cleanup activities. Since those facts are uncontested by record evidence, it is clear that were we to grant the city's request to withdraw its deemed admissions, the government would still be entitled to summary judgment on liability.

In light of the absence of a meritorious defense, an analysis of the remaining *Scarborough* factors is unnecessary. However, we note that the responsibility for failing to defend against this lawsuit is not solely the solicitor's. The mayor was aware of and involved in this action from the outset, yet apparently took no action to further the city's cause. The city's history of dilatoriness is well documented and there is no satisfactory explanation why it waited one year before moving to set aside the entry of partial summary judgment. This case is now two years old and we will not ask the United States to recommence discovery against a defendant which thus far has refused to cooperate. The government has been diligent in prosecuting this case and has given Scranton every opportunity to assert a defense if it chose to do so.

For the foregoing reasons, the City of Scranton's motion for relief from judgment and for leave to withdraw the deemed admissions will be denied. An appropriate order will issue.