747 F.2d 871
 40 Fed.R.Serv.2d 306
 Robert SCARBOROUGH, individually and on behalf of Jim-Bob,
Inc., Appellant,
v.
James EUBANKS, individually and as President of Jim-Bob,
Inc., Jim-Bob, Inc., a West Virginia corporation,
and Ryder Truck Lines, Inc., a Florida
corporation.
 No. 83-5601.
 United States Court of Appeals,
Third Circuit.
 Argued April 3, 1984.
Decided Nov. 5, 1984.
 
 George Retos, Jr. (Argued), Retos, Held & Associates, Washington, Pa., for appellant.
 Gary N. Altman (Argued), Hirsch, Weise & Tillman, Pittsburgh, Pa., for appellees James Eubanks, and Jim-Bob, Inc.
 John A. Allegretti, William A. Gray, Vuono, Lavelle & Gray, Pittsburgh, Pa., for appellee Ryder Truck Lines, Inc.
 Before GIBBONS, SLOVITER, Circuit Judges, and BISSELL, District Judge*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 This is an appeal from a dismissal with prejudice used as a sanction for dilatory conduct by counsel, presenting the same issue as in Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, also decided today.
 
 I.
 Background
 
 2
 It appears from the pleadings and pretrial statements that Robert Scarborough and James Eubanks, through a corporation controlled by them, were granted an exclusive agency by Ryder Truck Lines, Inc. (Ryder) to solicit and sell Ryder freight services in Ohio, West Virginia and parts of Pennsylvania; that Scarborough, Eubanks and their wives formed two corporations, first Jim-Bob, Inc. and thereafter Bob Jim Trucking Co. because the earlier name was not available in West Virginia; that an agreement was entered on July 1, 1978 between Ryder and the Scarborough-Eubanks corporation granting the exclusive agency; that Ryder purported to cancel that agreement by a letter of March 26, 1980; and, that on March 28, 1980 Ryder contracted with Eubanks individually granting him those same exclusive rights covering the same territory previously granted to the corporation.
 
 
 3
 In June 1982 Scarborough filed suit in the United States District Court for the Western District of Pennsylvania, individually and on behalf of Jim-Bob, Inc., against Jim-Bob, Inc., Eubanks individually and as president of Jim-Bob, Inc., and Ryder. The complaint alleges in Count I that Eubanks violated his fiduciary duties to Jim-Bob and its shareholders by wrongfully appropriating the contract, a corporate asset, and in Count II that Ryder breached its prior contract with Jim-Bob and tortiously interfered with the ongoing contractual relationship between Jim-Bob and Ryder. The complaint sought an accounting, and compensatory and punitive damages. Jurisdiction was based on diversity of citizenship.
 
 
 4
 Ryder moved to dismiss the claim against it on the ground that as a matter of law it could not interfere with its own prior contract; and alleged in the motion that it had no contract with Jim-Bob, that its contract with Bob Jim Trucking, Inc. was terminated on March 26, 1980, and that the suit was barred by the applicable statute of limitations. It filed an affidavit in support of the motion to dismiss. Scarborough filed an answer to the motion to dismiss, supported by his affidavit. In that affidavit, Scarborough swears, inter alia, that his purported signature on Ryder's cancellation letter of March 26, 1980 is not in fact his, and that he never agreed to waive the 30 day notice of termination required under the July 1, 1978 contract.
 
 
 5
 The answer filed on behalf of Eubanks and Bob Jim Trucking Co. (although it was Jim-Bob, Inc. that was the corporate entity named in the complaint) alleged that the prior contract with Ryder had been lawfully terminated and that Scarborough had voluntarily stopped working for the corporation. They asserted a counterclaim against Scarborough individually seeking to recover the salary paid to him as well as the costs and attorneys' fees incurred in this litigation. Plaintiff Scarborough filed a reply to the new matter and an answer to the counterclaim.
 
 
 6
 With Ryder's motion to dismiss still outstanding, the parties had a status conference with the court on November 5, 1982. The court order entered on that day provided that discovery was to close January 5, 1983; Scarborough was to file a pretrial statement on January 26, 1983; defendants were to file their statements on February 16; and scheduled a pretrial conference for March 11, 1983.
 
 
 7
 The record shows that plaintiff and Eubanks/Jim-Bob filed cross-notices of depositions and requests for production of documents. There is no subsequent reference to any deposition having been taken. Ryder filed requests for admissions to the other co-defendants, which were answered and appear on the record.
 
 
 8
 Up to this time, this case appears to have proceeded in an unexceptional manner. However, Scarborough did not file his pretrial statement on January 26 when due, and on February 8, 1983 Eubanks filed a motion for involuntary dismissal under Rule 41(b). Three days later, on February 11, 1983 plaintiff filed his pretrial statement and on the same day the court denied the motion for involuntary dismissal. On February 25, all the defendants filed their pretrial statements, and the pretrial conference was held on the date originally scheduled, March 1, 1983.
 
 
 9
 As shown by the transcript, that conference proceeded along the usual course. There was no reference to plaintiff's delay in filing his pretrial statement. The court found some deficiencies in the pretrial statements of all of the parties. All of the statements had failed to designate whether specific witnesses were to testify as to damages or liability and had failed to designate experts. Tr. 2-3. In its order signed the same day the court directed all parties to file amended pretrial statements by March 18, 1983, although defendants may have construed the colloquy at the conference as an oral amendment. That order also provided that only those witnesses and exhibits specifically listed would be admissible at trial, and stated that Ryder's motion to dismiss would be converted to one for summary judgment. The order also provided that "[p]laintiff must address damages and how he will prove those damages in amended pretrial." In this regard, the court stated at the pretrial conference,
 
 
 10
 The pretrial rules, Mr. Retos, require you to set forth the damages that you are claiming. You list damages in terms of only--I think areas of damages, rather than setting forth the damages and how you intend to prove them, which the pretrial rules require you to do.
 
 
 11
 * * *
 
 
 12
 You set forth damages, loss of profit, for instance. You just use the words, "loss of profits". You are required to tell him what you are claiming in loss of profits and how you intend to prove it.
 
 
 13
 So, in your amended pretrial, I'm advising you that only those damages which you set forth particularly, in amount as well as in method of proof, will you be allowed to present at trial. So you can take care of that in your amended pretrial.
 
 
 14
 Tr. 10.
 
 
 15
 In response to a comment by defense counsel with regard to the claim for damages, the court stated:
 
 
 16
 What I have listed here is loss of profits, exemplary damages, damages to the corporate entity of Jim-Bob, Inc., and/or Jim-Bob Trucking Company, Inc., damage to the shareholders of Jim-Bob, Inc., or Jim-Bob Trucking Company, attorney's fees and costs of suit, and that's what's listed.
 
 
 17
 Now in each of those areas, he's going to have to specifically set forth, except in exemplary damages, but in all other areas he is going to have to set forth exactly what damages he is claiming and how he intends to prove those damages.
 
 
 18
 Tr. 11. The court also requested a brief from plaintiff on an issue of West Virginia law, and directed the parties to file voir dire questions and points for charge.
 
 
 19
 Despite the pretrial order requiring "all parties" to file amended pretrial statements by March 18, no party filed any amendment by that date. On March 24 Eubanks again filed a motion for involuntary dismissal under Rule 41 and plaintiff filed his amended pretrial statement on March 28, 1983, 10 days late. On April 1, 1983, Eubanks and Bob Jim Trucking, Inc. filed a third motion for involuntary dismissal and/or lesser sanctions, asserting that plaintiff's amended pretrial statement was deficient.
 
 
 20
 Defendants contended, inter alia, that plaintiff's amended pretrial statement listed witnesses who had not heretofore been listed on the original documents, included an additional claim for damages for the alleged non-funding of a pension plan not heretofore referred to, alluded to an expert witness who was not identified, and referred to damages that were not described with precision. In that regard, defendants claimed that "[d]efendants cannot ascertain any difference between the loss of profits claim and the damage to the corporate entity claim as set forth in the Amended Pre-Trial Statement. Plaintiff sets out no method by which he will prove these damages nor any legal theory which would entitle him to these damages."
 
 
 21
 The defendants' motion requested the court to dismiss the action for failure of plaintiff to prosecute under Rule 41, for failure of plaintiff to comply with Fed.R.Civ.P. 16 and Western District Local Rule 5, and for failure to comply with the court order entered March 11, 1983. As an alternative, defendants requested the court to preclude witnesses and certain evidence, to limit the claims to those asserted in timely fashion by plaintiff, and to grant defendants attorneys' fees and costs in preparing the three motions to dismiss. Defendants filed their request for charge on April 1 and plaintiff filed his points for charge on April 8.
 
 
 22
 On April 8, 1983 the district court entered an order granting "part of defendants' Motion for Involuntary Dismissal." That order recited that plaintiff's original pretrial statement was filed on February 11, 1983 instead of January 26, 1983; that his amended pretrial statement was filed March 28 instead of March 11, and that his request for charge was received on April 8 rather than on April 1. The order states that the amended pretrial statement "was again deficient in that it did not sufficiently specify the damages claimed and how those damages will be established as required by ... Local Rule 5."
 
 
 23
 On May 4, the district court amended this order upon consideration of this court's decision in Poulis v. State Farm Fire and Casualty Co., 714 F.2d 124 (3d Cir.1983) which had required reconsideration of alternative sanctions to dismissal. The order was amended to include the following:
 
 
 24
 II. The Court has considered other possible sanctions in lieu of dismissal, such as costs, attorneys' fees, and monetary penalties against plaintiff's counsel, and found them inappropriate for the following reasons:
 
 
 25
 a. there were no costs incurred which the Court could assess against plaintiff or plaintiff's counsel;
 
 
 26
 b. there were no attorneys' fees incurred (such as fees for appearance at a conference or hearing) that the Court could assess against plaintiff or plaintiff's counsel; and
 
 
 27
 c. the Court finds no authority, either statutory or nonstatutory, for penalizing plaintiff's counsel by a monetary fine.
 
 Plaintiff appeals.[1]
 II.
 Analysis
 
 28
 In Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, (3d Cir.1984) filed today, we recapitulated the appropriate factors that the trial court must consider before dismissing a complaint or entering a judgment of default as a sanction. Because such an order deprives a party of its day in court, our precedent requires that we carefully review each such case to ascertain whether the district court abused its discretion in applying such an extreme sanction. We turn therefore to consider the relevant factors in the circumstances of this case.
 
 
 29
 1. The extent of the party's personal responsibility
 
 
 30
 As in Poulis, there has been no suggestion here that Scarborough is personally responsible for the late pretrial statements or the deficiencies found by the district court with regard to the amended pretrial statement.
 
 2. A history of dilatoriness
 
 31
 Although both pretrial statements, the required brief and the points for charge were filed inexcusably late,[2] and the district court order stated that it was necessary for the district court's staff to contact plaintiff's counsel before eliciting the statements, in this case there has been no default comparable to that in Poulis, where defendant's interrogatories were never answered.
 
 
 32
 3. Whether the attorney's conduct was willful and in bad faith
 
 
 33
 Here, unlike Poulis, the district court made no finding that plaintiff's counsel's conduct was of a contumacious nature. Moreover, there would be no basis in the record for such a finding. Plaintiff's counsel filed all the required pleadings, including an answer to the counterclaim and to the new matter, and an answer to the motion to dismiss. He also filed both of the required pretrial statements, albeit somewhat tardily. Although the court regarded the amended pretrial statement as deficient, one can hardly regard the deficiency as one stemming from the type of willful or contumacious behavior which was characterized as "flagrant bad faith" in National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976).[3]
 
 4. Meritoriousness of the claim
 
 34
 For purposes of dismissal, a claim will be considered meritorious when the allegations of the pleading, if established at trial, would support recovery by plaintiff. The meritoriousness of the claim for this purpose must be evaluated on the basis of the facial validity of the pleadings, and not on summary judgment standards.
 
 
 35
 Plaintiff alleges in essence that Eubanks appropriated a corporate asset, the contract, that rightfully belonged to the corporation and that Ryder breached the contract and tortiously interfered with it. The Answer of Eubanks and Bob Jim asserts primarily factual, not legal, defenses. The only claim of legal insufficiency was that presented by Ryder in its motion to dismiss where it contended that as a matter of law it cannot tortiously interfere with its own contract. Ryder also alleges that it could not be held to have breached the contract because it had terminated the contract in the manner called for. However, even if disposition of that motion were in Ryder's favor, and the entire claim against it were dismissed, the claim against Eubanks and the corporation would not be extinguished. We cannot say plaintiff has not made out a facially valid claim.5. Prejudice to the other party
 
 
 36
 If there has been true prejudice to a party by its adversary's failure to file a timely or adequate pleading, discovery response, or pretrial statement, that factor would bear substantial weight in support of a dismissal or default judgment. Examples of such prejudice are the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.
 
 
 37
 In this case, Ryder claims no prejudice to it. Certainly the one or two week delay in filing the first pretrial statement, the amendment, and the brief, while unjustified, did not cause any defendant prejudice. Defendants did not file their first pretrial statement when due, but instead waited until two weeks after the plaintiff's statement was filed, approximately the same time interval permitted under the court's order. Each court conference was held on the date originally scheduled.[4]
 
 
 38
 Although Eubanks and Bob Jim purport to have been prejudiced, their brief in this regard is even less specific than was plaintiff's pretrial statement as to damages. They state that they would be penalized if they were required to "go through with a complete jury trial when they have no idea of what to defend against." Brief for Appellees Eubanks and Bob Jim at 23. This was not the basis on which the district court entered its order of dismissal. Moreover, the contention appears somewhat disingenuous since their co-defendant Ryder has not had the same difficulty. It succinctly describes the complaint as alleging:
 
 
 39
 that defendant Eubanks wrongfully, willfully, and maliciously excluded plaintiff from his employment with defendant Jim-Bob; that he maliciously excluded plaintiff from participation in the business of Jim-Bob; that defendant Eubanks acted in violation of his fiduciary duties and official responsibilities to defendant Jim-Bob and its shareholders; that defendant Ryder breached its contract with defendant Jim-Bob; and that defendant Ryder tortiously interfered with the contractual relationship between defendant Jim-Bob and defendant Ryder.
 
 
 40
 Brief for Appellee Ryder at 4-5.
 
 
 41
 In its order dismissing the complaint, the district court stated that the plaintiff's first pretrial statement was deficient "in that it failed to include the method of calculating damages and how damages will be proven as required by Rule 5 of the Local Rules" and that the amended pretrial statement was again deficient in that "it did not sufficiently specify the damages claimed and how these damages will be established as required by the [district's] Local Rule 5." The relevant portion of Rule 5 of the Local Rules of the United States District Court for the Western District of Pennsylvania provides that plaintiff must "file and serve a brief narrative statement of the material facts he will offer at trial, including all damages claimed, the method of calculation, and how damages will be proven."
 
 
 42
 With regard to damages, the plaintiff's amended pretrial statement states:
 
 
 43
 It is Plaintiff's position that the agreement between the Defendant Ryder Truck Lines and the Corporate entity has never been properly terminated and that any profits or monies earned through the dispatch business should have inured to the benefit of the Corporation and the Plaintiff as a stockholder therein. The Plaintiff claims damages for the loss of profits that the Corporation earned or should have earned from the dispatch business. The method of calculation for the lost profits will be based largely on the value of the business at the time Defendant Eubanks began converting the contractual asset to his own benefit as well as the financial earning history of the Corporation and profits that were earned or should have been earned by the Corporate entity as may be determined by the Corporate tax returns. These damages will be proven by the financial books and records of the Corporation, the financial history of the contractual relationship between the Corporate entity and the Defendant Ryder Truck Lines and an analysis by Plaintiff's expert witness.
 
 It also states:
 E. DAMAGES:
 
 44
 1. Lost profits--Plaintiff will introduce testimony to show the amount of business that was being done by him alone and how the business was built. Plaintiff will also show the amount of monies earned by the Corporate shareholders during the years 1978, 1979 and 1980 and the amount of monies taken by Defendant Eubanks in 1981 and thereafter. The amount of monies vary with each year and will be proven by testimony from Plaintiff's expert witnesses, including but not limited to a Certified Public Accountant.
 
 
 45
 2. Damage to the Corporate entity of Jim-Bob, Inc. and/or Bob Jim Trucking, Inc. and to its shareholders as a result of Defendant Eubanks converting the Corporate asset, that being the agreement between the Corporation and Ryder Truck Lines, Inc. to his own use and subsequently to his wholly owned corporation--Plaintiff will establish the lost monies diverted by Defendant Eubanks to himself and subsequently to his own corporation in the same fashion as set forth above where lost profits will be shown.
 
 
 46
 Although plaintiff's statement is hardly a model of clarity, we cannot say that defendants will be prejudiced by having received no notice of plaintiff's damage theory, since it is apparent plaintiff's theory is that he is entitled to lost profits that he would have received as a shareholder, and that the corporation is entitled to the value of the contract that was either breached or terminated. Moreover, we note that the record shows no effort by Eubanks and Bob Jim to use the available discovery tools, such as interrogatories, to require plaintiff to set forth with specificity and under oath each item of damage claimed, the amount and the supporting contentions, nor does it show that they filed Requests for Admissions or even took the deposition of Scarborough, as noticed, where they would have had ample opportunity to cross-examine him and pin down his damage theory before pretrial statements were due. All the parties have a responsibility to the trial court to have the case in a posture ready for trial.
 
 6. Alternative sanctions
 
 47
 Following the remand by this court in Poulis I directing the same district court to consider alternative sanctions, the court entered an order in this case using language almost identical to that it used in Poulis on remand stating that there were no appropriate alternative sanctions. This ruling is in error. Defendants' complaints with regard to the witnesses and elements of damages not listed by plaintiff in his original pretrial statement, as well as the failure to identify the expert, were not referred to by the court as the basis for its dismissal order. In any event, a preclusion order would be an effective and appropriate alternative sanction.[5] Similarly, the court's statement that there were no attorney's fees that it could assess against plaintiff or plaintiff's counsel is erroneous. Defendants Eubanks and Bob Jim requested attorney's fees and costs for the preparation of the three motions to dismiss. Although their equitable claim to such an order may be questionable because, as noted above, they have concentrated on filing motions to dismiss instead of using the procedures available to them in the spirit of the Federal Rules to remedy the perceived deficiencies, imposition of attorneys' fees was an available remedy that defendants themselves requested.
 
 III.
 Conclusion
 
 48
 In summary, the tardiness was serious, but not flagrant; it was the responsibility of plaintiff's counsel, but not plaintiff; the pretrial statement was deficient, but not fatally defective; the claim is facially meritorious; the conduct of the defendants, excluding Ryder, could have been more productive; and we cannot find plaintiff's conduct so contumacious or flagrantly violative of federal or local rules or the court's order as to warrant the extreme sanction of dismissal. As we have repeatedly stated, doubts should be resolved in favor of reaching a decision on the merits, see Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 122 (3d Cir.1983), and alternative sanctions should be used.
 
 
 49
 We will vacate the dismissal and remand this case to the trial court for proceedings consistent with this opinion.
 
 
 
 *
 Hon. John W. Bissell, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Because the scope of the district court's order was unclear, we remanded for clarification as to whether all counts against all defendants were dismissed. On July 25, the district court, based on "further consideration" of both the motion for dismissal and of Fed.R.Civ.P. 41(b) "raised sua sponte by the Court" as to all defendants, dismissed plaintiff's complaint as to all defendants for the reasons set forth in its orders of April 8 and May 4
 
 
 [2]
 The only excuse offered by plaintiff was that his office was closed on April 1, 1983 for Good Friday, which was one of the due dates
 
 
 [3]
 We find the assertion by Eubanks and Bob Jim that plaintiff's delays were "[w]ith malice aforethought", Brief for Eubanks and Bob Jim at 23, to be completely without record support. We discourage ad hominem attacks such as their statement that Retos "had lied to the Court by stating that he had mailed to the Court requested voir dire questions and points for charge on April 4, 1983, when the Court did not receive them until April 8, 1983." Id. at 17-18. In our experience, such a delay in mail delivery is not unusual
 
 
 [4]
 We note that at the inception of the litigation, defendants requested, and plaintiff agreed to, an additional 45 days to file their answers or motions to the complaint
 
 
 [5]
 Judge Bissell joins in the opinion, and notes that Local Rule 5 of the District Court for the Western District of Pennsylvania provides specifically:
 Failure to fully disclose in the pretrial narrative statements or at the pretrial conference the substance of the evidence proposed to be offered at trial, will result in the exclusion of that evidence at trial unless the parties otherwise agree or the court otherwise orders.
 Local Rule 5.II.D.5. (d) (emphasis added). In Judge Bissell's view, this sanction, legislated by the court itself, could well have been invoked; yet it is not even discussed in the district court's orders of April 8 and May 4, 1983. He finds that this represents a clear abuse of discretion.