John Henry **PELT**, Individually and as Partner of Aztec General Agency, a Texas General Partnership, et al, Relators,

v.

Honorable Derwood **JOHNSON**, Judge, 74th District Court, McLennan County, Texas, Respondent.

No. 10–91–149–CV.

Court of Appeals of Texas, Waco.

Oct. 30, 1991.

Rehearing Denied Nov. 13, 1991.

Douglas L. Baker, Pirtle & Baker, P.C., Rockwall, for relators.

Michael G. Cosby, Pakis, Cherry, Beard, & Giotes, Inc., Waco, for respondent.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

VANCE, Justice.

Relators seek a writ of mandamus requiring the Honorable Derwood Johnson, presiding judge of the 74th District Court, McLennan County, to vacate an order striking the Relators' pleadings. Following the guidelines for appellate review of "death-penalty" discovery sanctions enunciated by the Supreme Court in *Transamerican Natural Gas Corp. v. Powell,* we hold that the trial court's imposition of the ultimate sanction under these circumstances was not "appropriate." *See Transamerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917–18 (Tex.1991). We will conditionally issue the writ of mandamus.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 1988, OLS Electric, Inc. secured a contract which required a performance and payment bond. Relator John Pelt d/b/a Aztec General Agency placed the bond with the Great Plains Insurance Company after requiring O.L. Sharp and wife, Carol Sharp, and OLS (the plaintiffs) to sign an indemnity agreement and to provide $35,000 in security. They delivered to Pelt a $35,000 "irrevocable" letter of credit issued by MBank, Waco. In March 1989, Pelt became concerned about the financial stability of MBank and, ostensibly to protect the Sharps' interest, decided to unilaterally draw down the letter of credit. He did so over the plaintiffs' protests, even though OLS was performing its obligations under the construction contract, Great Plains had not incurred any losses attributable to OLS or the Sharps, and no liability had been asserted against Great Plains. The Sharps continued to do business with Pelt, and he provided them with two additional performance and payment bonds on other contracts.

The Sharps and OLS filed suit against Relators in January 1990, alleging breach of the contract, conversion, DTPA violations, and other causes of action, all based upon a premature drawing on the letter of credit. The Relators counterclaimed. A discovery dispute resulted in the entry of a sanction order striking Relators' pleadings. Relators then sought a writ of mandamus in this court.

## DISCOVERY EVENTS

The dispute arose out of the following events, evidenced primarily by letters between the attorneys representing the parties:

Pelt was served on October 11, 1990, with a notice of deposition with subpoena duces tecum requiring him to produce 15 categories of documents, including account statements, canceled checks, and deposit slips from April 3, 1989, to the date of the notice, for the account in which the $35,000 drawn on the letter of credit was deposited.

Relators filed a motion for protective order on October 16, specifically objecting to various items of the subpoena duces tecum, including an objection on relevancy grounds to producing the account statements, canceled checks, and deposit slips.

Pelt's deposition was taken on October 22.

On November 8, plaintiffs filed a motion for sanctions, seeking the documents and attorney's fees.

Following a November 20 hearing on Relators' motion for a protective order and plaintiffs' motion for sanctions, Respondent signed an order on December 6 compelling Pelt to produce all the documents within 10 days. The court further ordered Pelt to pay the cost of an additional deposition to follow production of the documents and found that good cause existed to require Pelt to pay the plaintiffs' attorney a fee of $250 as the reasonable and necessary cost of preparing and prosecuting the motion.

On January 23, 1991, plaintiffs advised Relators that the ordered documents had not been delivered and that a motion to strike Relators' pleadings would be filed if the documents were not furnished by January 28.

On February 7, Pelt produced all documents ordered, other than the canceled checks and deposit slips, and paid the attorney's fee. The documents were accompanied by a letter of apology from Relators' attorney advising that "... the delay ... was my fault and not the fault of our client."

On April 18, approximately two weeks prior to the date trial was scheduled, plaintiffs advised Relators by letter that the response to the discovery order was still incomplete because it did not include the canceled checks and deposit slips. The letter stated that plaintiffs were aware that Pelt might not have the items in his possession but noted, "he certainly has the right to request these documents from the bank." The letter further asserted that a motion to strike Relators'

pleadings would be filed if the documents were not delivered within ten days.

On April 25, plaintiffs agreed to move the trial setting to August 5 to allow time to complete the depositions of Relators. Plaintiffs stated that they understood that "[Relators were] gathering from [the] bank the documents made the subject of [the] April 18 letter" and asked for agreeable dates on which to take the depositions.

On May 7, plaintiffs advised Relators that if the documents were not delivered before May 14, a motion to strike Relators' pleadings would be filed.

On May 10, Relators advised plaintiffs that Pelt had not kept the canceled checks and deposit slips, that the bank's archive copies were maintained in another state, that they had obtained approval from an officer of the bank for plaintiffs to inspect the canceled checks and deposit slips and obtain copies of those they desired, and that the bank's "research and copy" charges would total between $3,000 and $5,000, depending on the number of copies required. The letter contained an authorization for plaintiffs to obtain any document regarding the bank account.

On May 15, the plaintiffs acknowledged the authorization, but advised Relators that they would not pay the charges and that the burden remained on them to produce the canceled checks and deposit slips under the court's order.

Plaintiffs filed another motion for sanctions on June 24, seeking to have Relators' pleadings stricken and to recover attorney's fees.

The deposition of Nancy Mitchell, an officer of Pelt's bank, was taken on July 11, 1991.

On July 26, Relators responded with a motion for protection, stating that the canceled checks and deposit slips had been routinely discarded, that arrangements had been made with the bank for plaintiffs to obtain copies, and that the cost of obtaining the copies should be borne by the plaintiffs.

On July 12, Judge James F. Clawson, Jr., a visiting judge, held a hearing on the motion for sanctions and on July 18 signed a sanction order striking all of Relators' pleadings and ordering that trial proceed on the issue of damages only.

Relators asked for permission to file a petition for writ of mandamus in this court, which we granted. On August 15, we abated the petition to allow Relators time to present a motion to vacate the death-penalty sanction to Respondent. *See Jampole v. Touchy,* 673 S.W.2d 569, 572 (Tex.1984).

On September 16, Respondent denied Relators' motion to vacate the sanction and reaffirmed the July 18 order striking the pleadings.

### MANDAMUS AS A REMEDY

Relators complain that the trial court erroneously struck their pleadings. Although mandamus is not a proper remedy in an ordinary case to obtain relief from sanctions, it is a proper vehicle for review of pretrial sanctions which have the effect of precluding a decision on the merits of a party's claim (the "death penalty"). *Transamerican,* 811 S.W.2d at 919–20; *Street v. Second Court of Appeals,* 715 S.W.2d 638, 639–40 (Tex.1986). In such instances, an appeal is an inadequate remedy. *Transamerican,* 811 S.W.2d at 918.

### "DEATH–PENALTY" SANCTIONS

### AMENDMENT TO RULE 215

Rule 215(5) was amended on September 1, 1990, to allow the court to impose any "appropriate" sanction authorized by paragraphs 2(b)(1), (2), (3), (4), (5), or (8) after notice and a hearing. Tex.R.Civ.P. 215. In the context of Rule 215, "appropriate" and "just" are equivalent standards. *Transamerican,* 811 S.W.2d at 916 n. 4. In reviewing a death-penalty sanction, we must find a direct relationship between the offensive conduct and the sanction imposed—the sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party in order to be "just." *See id.* at 917. "Just sanctions must not be excessive." *Id.*

"The punishment must fit the crime." *Id.* "A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes."[1] *Id.* "[C]ourts must consider the availability of less stringent sanctions and whether lesser sanctions would promote compliance." *Id.* Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *Id.* at 918; *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976).

## STANDARD OF REVIEW

The Supreme Court in *Transamerican* stated that these standards set the bounds of permissible sanctions under Rule 215 within which the court is to exercise sound discretion.[2] *See Transamerican*, 811 S.W.2d at 917; Tex.R.Civ.P. 215. Our role is to determine if the court acted without reference to any guiding rules and principles. *See Hanley v. Hanley*, 813 S.W.2d 511, 517–18 (Tex.App.—Dallas 1991, no writ). Stated another way, we must determine if the act was arbitrary or unreasonable. *Id.* That we might have decided a matter within the trial judge's discretion in a different manner does not demonstrate that an abuse of discretion has occurred. *Id.*

The ultimate sanction should be applied only "when [the offending party] is guilty of *actual bad faith* in discovery abuses and *great harm comes to [the other party] as a result.*" *Hogan v. Beckel*, 783 S.W.2d 307, 309 (Tex.App.—San Antonio 1990, writ denied) (emphasis added). Several factors are relevant to an inquiry concerning appropriateness of a sanction:

1. the extent of the *party's* personal *responsibility;*
2. the *prejudice* to the adversary caused by the failure to ... respond to discovery;
3. any history of dilatoriness;
4. whether the conduct of the party or the attorney was *willful* or in *bad faith;*
5. the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and
6. the *meritoriousness* of the claim or defense.

*See Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868–70 (3rd Cir. 1984); *see also Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir.1990); *Hanley*, 813 S.W.2d at 517–18; Tex.R.Civ.P. 215. These "factors should be weighed by the district courts in order to assure that the 'extreme' sanction of dismissal or default is reserved for the instances in which it is justly merited."[3] *Poulis*, 747 F.2d at 870; *Hanley*, 813 S.W.2d at 518. The trial courts should resolve doubts in favor of reaching a deci-

1. We interpret this as equivalent to a rule that the court should impose the "least severe sanction adequate" to accomplish the purpose of Rule 215. *See* Johnson, Keeling, and Contois, *The Least Severe Sanction Adequate: Reversing the Trend in Rule 11 Sanctions*, 54 Tex.B.J. 952. While Rule 215 does not correspond to Federal Rule 11, the concept is applicable to the imposition of sanctions for discovery abuse. Imposition of the least severe sanction adequate to remedy the discovery abuse would ordinarily result in an "appropriate" sanction and should advance the goal of the elimination of "hardball" discovery practices where the death penalty, rather than true discovery in preparation for trial on the merits, is the goal.

2. *Compare Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir.1985) (holding that when the ultimate sanction is imposed, the trial court's discretion is narrowed, and if the trial court applies the wrong legal standard, the appellate review is *de novo*); Soules, *The Standard for Appellate Review of Discovery "Death Penalty" Cases*, State Bar of Texas, 1991 Advanced Civil Appellate Practice Course Manual B–1 (1991) (criticizing the abuse-of-discretion standard as providing no criteria, no measure, no test, and imposing no elements of analysis for review); *see also* Kilgarlin, *1991 Sanctions Update*, State Bar of Texas, Judicial Section Annual Conference (stating "the supreme court has given every indication of its intent to cut back on death penalty sanctions ... which inhibit a party's ability to present its case at trial.")

3. *See also Transamerican*, 811 S.W.2d at 920–21 (Justice Gonzales's concurring opinion enumerating standards and guidelines under Federal Rule 11 which are "instructive" in considering sanctions under Rule 215).

sion on the merits. *Scarborough v. Eubanks,* 747 F.2d 871, 878 (3rd Cir.1984); *Hanley,* 813 S.W.2d at 518.

## REVIEW OF THIS SANCTION

We will review the events which led to the imposition of the ultimate sanction under the criteria of *Poulis. See Poulis,* 747 F.2d at 868–70; *Hanley,* 813 S.W.2d at 518–21.

## EXTENT OF PARTY'S PERSONAL RESPONSIBILITY

Rule 215 allows sanctions against the "disobedient party," the "attorney advising him," or both. *E.g., McFarland v. Szakalum,* 809 S.W.2d 760, 763 (Tex.App.—Houston [14th Dist.] 1991, writ denied); TEX.R.CIV.P. 215. Where the discovery abuse results from conduct of the attorney, the sanction may be directed at him. *Id.* Thus, in selecting an appropriate sanction, the relative culpability of the party and his attorney must be evaluated. *Hanley,* 813 S.W.2d at 518–19. The record reveals that Relators relied on the advice of their attorney. When he was asked during his deposition about documents which he was to supply, Pelt in each instance relied on the advice of his attorney and the pending motion for a protective order. It was the attorney's responsibility to obtain a hearing on the motion for protection prior to Pelt's deposition, if Relators were relying on the motion. In the February 7 letter to plaintiff's attorney, Relators' attorney accepted responsibility for delay in providing documents. After the last motion for sanctions was filed and prior to the hearing on the motion, Relators took the deposition of a bank officer in Dallas to establish the procedure for obtaining copies of the canceled checks and deposit slips. Evidence at the hearing indicated that the date and the manner of taking the deposition, with plaintiffs' counsel appearing by telephone, were agreed to between the attorneys and that the date was changed once to accommodate the plaintiffs' attorney. At the July hearing, Relators' attorney attempted to present the nature of the dispute as being who should pay the costs of obtaining the copies from the bank.

## PREJUDICE TO THE ADVERSARY

If true prejudice has resulted to a party by another party's failure to cooperate during discovery, that factor should be given substantial weight in the evaluation of the ultimate sanction against the other party. *Scarborough,* 747 F.2d at 876; *Hanley,* 813 S.W.2d at 519. Prejudice can result from such conditions as the manufacture of evidence, destruction of evidence, irretrievable loss of evidence, the inevitable dimming of witnesses' memories, incurring excessive burdens and costs, and other situations in which the party cannot be restored to the same status by an appropriate sanction. *Id; see also City of Dallas v. Cox,* 793 S.W.2d 701, 724–25 (Tex. App.—Dallas 1990, no writ). Although the plaintiffs were forced to take the initial deposition without any of the documents they had subpoenaed, Pelt was ordered to pay the costs of another deposition. They were forced to file two motions to compel compliance with discovery requests, but they obtained attorney's fees on the first motion and did not seek attorney's fees on the second. The trial date was postponed, but prejudice to plaintiffs has not been shown to have resulted from the delay.

## HISTORY OF DILATORINESS

Courts faced with crowded dockets and limited resources cannot excuse repeated acts of discovery abuse. *Hogan,* 783 S.W.2d at 309. The record does not reveal that Pelt was trying to thwart plaintiffs' efforts to discover the canceled checks and deposit slips. *See id.* at 310. This is not a case where discovery was never answered. *See Hanley,* 813 S.W.2d at 520. The record shows that Pelt ultimately complied with each discovery request to the extent that the documents requested were in his possession. He testified without contradiction that he had more than one hundred bank accounts and that he customarily threw away his checks and deposit slips. He kept only the account statements, which he furnished to plaintiffs. His attorney filed motions seeking protection, although the attorney did not obtain a hearing be-

fore the first deposition. His attorney caused a deposition of the bank officer to be taken to establish the cost of obtaining the copies from the bank.

## WHETHER THE CONDUCT WAS WILLFUL OR IN BAD FAITH

The ultimate sanction should not be imposed in the absence of *actual bad faith* and *great harm to the other party.* *Hogan,* 783 S.W.2d at 309 (emphasis added). Because the record supports the proposition that the primary delay in this case was due to the conduct of Relators' attorney, we will evaluate his conduct for willfulness or bad faith. He failed to obtain a hearing on his first motion for protection and failed to call the court's attention to the fact that Pelt did not have the checks and deposit slips, relying only on an objection that they were not relevant and would not lead to discoverable evidence. As stated, he accepted responsibility for a portion of the delay. He did not file the second motion for protection until after plaintiffs filed their motion to impose the death penalty. The court, however, made no finding that either Relators' conduct or that of their attorney was willful or in bad faith. Although we do not approve of Relators' attorney's failure to promptly obtain hearings on motions which he filed or his delay in advising the court of the true nature of the discovery dispute over the canceled checks and deposit slips, we cannot say that he willfully delayed the discovery process or acted in bad faith. Thus, neither willfulness nor bad faith can be attributed to Relators.

## ALTERNATIVE SANCTIONS

The death penalty should be a sanction of last, not first, resort. *Hanley,* 813 S.W.2d at 520. At the July hearing, plaintiffs argued that Relators had not complied with the December 6 order to produce all the documents and that the cost to Relators of locating and copying documents in the hands of a third party was immaterial because of that order. The court, accepting plaintiffs' position, failed to focus on the true nature of the dispute over the canceled checks and deposit slips—who should pay the bank's research and copying charges to make the copies available. The court appears from the record to have accepted as true Pelt's testimony that he regularly discarded his canceled checks and deposit slips. Based on this premise, the court could have entered an order that Pelt pay the bank's charges or, to preserve the question of who should pay the charges until after trial, it could have ordered either party to pay the bank's charges while reserving the right to require reimbursement by the other party when the outcome of the case was known. The record reveals that the court did not consider alternative, lesser sanctions available to it before imposing the "death penalty" and denying the Relators the right to present their claims and defenses at a trial on the merits.

## MERITORIOUSNESS OF RELATORS' CLAIM OR DEFENSE

A claim or defense is meritorious if the allegations of the pleadings, if true, would support a recovery on the claim or establish a legal or factual defense to the claims of the other party. *See id.* Here, Relators asserted both counterclaims and defenses. Relators contend that Pelt had the right to draw on the letter of credit at any time. If true, the foundation of the plaintiffs' case would be undermined. The record does not shed appreciable light on the meritorious nature of either the counterclaims or the defenses advanced by Relators. The court made *no finding about the merits of Relators'* claims and defenses.

## SUMMARY

Relators do not appear to bear appreciable personal responsibility for the discovery dispute. While plaintiffs did suffer inconvenience and delay, they did not assert and the court did not find true prejudice to their position on the merits of their claims or the counterclaims asserted against them. Clearly, both attorneys were responsible for the court's failure to focus on the true nature of the dispute. A lesser sanction—such as an order requiring Pelt to pay the bank's charges—would have resulted in the plaintiffs' obtaining all the requested items. The court did not consid-

er any of the alternative sanctions available to it. Relators' claims and defenses are the type which could defeat plaintiffs' claims.

## CONCLUSION

We conclude that Relators were not guilty of the type of flagrant bad faith which justifies the death-penalty sanction. *See Transamerican,* 811 S.W.2d at 918; *Hanley,* 813 S.W.2d at 521. In short, we do not believe that the sanction was appropriate—the punishment did not fit the crime. *See Transamerican,* 811 S.W.2d at 917. Thus, we hold that Respondent abused his discretion in failing to vacate the order dated July 18, 1991, by which Relators' pleadings were stricken. *Id.*

Accordingly, we hold that Relators are entitled to the mandamus relief they seek. We are confident that Judge Johnson will vacate the orders dated July 18 and September 16. Our writ of mandamus will issue only in the event he fails to promptly comply.

CUMMINGS, J., dissents.

CUMMINGS, Justice, dissenting.

If we follow the recent Supreme Court guidelines in determining whether the "death penalty" sanction is proper, we should approve its imposition in this case. *See Transamerica Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917–18 (Tex.1991).

In determining whether a sanction is "just", the Court suggested two standards to be followed. First, there should be a direct relationship between the offensive conduct and the sanction imposed, meaning that the sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. Second, "just" sanctions must not be excessive and a sanction imposed for discovery abuse should be no more severe than necessary. *See Id.* at 917. Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses *unless* a party's hindrance of the discovery process justified a presumption that its claims or defenses lack merit. However, if a party refuses to produce material evidence, despite the im-

position of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it. *Id.* at 918. (Emphasis added). Further, the court should not impose "death penalty" sanctions absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules. *See Id.* at 918.

In this case, Pelt was noticed for a deposition with subpoena duces tecum requiring him to bring several documents, including canceled checks and deposit slips from the business account where the money in controversy had been deposited. He appeared for the deposition on October 22, 1990, without the requested documents. Neither he nor his counsel advised opposing counsel at that time that Relators routinely disposed of his canceled checks and deposit slips each month after he reconciled his bank statement. On November 20, the court heard Relators' motion for protection and the plaintiffs' motion to compel. It is important to note the court's ruling set out in the order dated December 6, 1990, ordered the Relators to produce the requested items to the plaintiffs within 10 days and ordered him to pay $250 to plaintiffs' counsel as a reasonable attorney's fee for having to prepare and prosecute the motion to compel.

After plaintiffs' counsel notified Relators' counsel by letter dated January 23, 1991, that none of the ordered documents had been received and further stating that a motion to strike pleadings would be filed if the documents were not received by January 28, Relators' counsel delivered all the requested documents but the canceled checks and deposit slips on February 7 and paid the $250 fine. Note that neither Relators nor their counsel advised plaintiffs' counsel at that time that the canceled checks and deposit slips had been destroyed.

On April 28, two weeks before the trial was scheduled, plaintiffs' counsel advised Relators by letter that discovery was still incomplete because of their failure to deliver the checks and deposit slips. The letter further advised that a motion to strike

pleadings would be filed if the missing documents were not provided within ten days.

On April 25, plaintiffs agreed in a letter to move the trial setting to August 5 to allow time to complete the depositions of Relators. They stated in the letter their understanding that Relators were obtaining the missing items from the bank. On May 7, plaintiffs advised Relators that if documents were not delivered by May 14 that a motion to strike pleadings would be filed.

Finally, on May 10, Relators advised Plaintiffs that Pelt had not kept the canceled checks and deposit slips, but that Relators had obtained approval for the plaintiffs to obtain the same from the bank at plaintiffs' expense, estimated to be from $3,000 to $5,000. Plaintiffs' acknowledged receiving this information and advised Relators in a letter on May 15 that the burden was on Relators to produce the court-ordered documents.

On June 24, as an apparent last remedy, plaintiffs filed a motion for sanctions seeking to strike Relators' pleadings and to recover attorney's fees. On June 26, Relators responded with a motion for protection, which was aptly described by plaintiffs' counsel as "a motion seeking protection from the court's own order."

Here, the court had already ruled on December 6, 1990, that the requested documents were material; however, in the hearing on motion for sanctions and Relators' motion for protection presided over by visiting judge, Honorable J.F. Clawson, Relators sought to argue that the checks and deposit slips were not relevant. The visiting judge was correct in advising Relators that the relevancy matter had already been litigated and was not before the court. In Pelt's testimony at the hearing, he stated that "I throw away the checks ..." Even so, Relators made a final argument that the canceled checks and deposit slips were not discoverable because they were no longer under the "care, custody and control" of Relators, but were obtainable from the bank. The court responded to the effect that no one is obligated to keep can-

celed checks and deposit slips, but that it is probably prudent for business people to keep adequate records, especially in view of IRS requirements. The court further ruled that this argument was not timely, that it should have been raised at the November 20, 1990, hearing.

In ordering the Relators' pleadings stricken, the court could have reasoned that the offensive conduct was caused directly by the Relators in destroying his canceled checks and deposit slips. The court could have also reasoned that Relators were intentionally dilatory in not advising plaintiffs' counsel of this fact when the other requested documents were delivered on February 7, 1991. After hearing Relators testify and watching the interaction of the Relator with his counsel, the court could have also reasoned that Relators were intentionally attempting to abuse the discovery process, for it was the Relators who destroyed the items sought to be discovered, not Relators' counsel. In making its decision, the court could have concluded that Relators' counsel was simply following his clients' directives. Relators failed to advise the court at the hearing on the motion to compel on November 20, 1990, that Pelt had thrown away the canceled checks and deposit slips or at any of the other communications between the parties' counsel until it was finally revealed on May 10, 1991, at which time Relators' position was that plaintiffs could get the documents, but only at a cost of $3,000 to $5,000. From this conduct, the court could have found the Relators were acting in bad faith. Here, the court could have considered the precedent that would have been established if Relators' position had been followed. All a party would have to do to avoid discovery would be to destroy the requested records and make it either impossible or too costly for the requesting party to obtain them.

Here, the court followed the Supreme Court's guideline in that, before ordering the pleadings stricken, it had ordered lesser sanctions, which Relators had refused to follow, thereby availing the court of the presumption that the Relators' pleadings

lacked merit and could be stricken. *See Id.* at 918.

In Justice Gonzales's concurring opinion in *Transamerica,* he states that "... trial judges should not be trigger happy. They should first issue orders compelling discovery." This is exactly what occurred in this case, followed by the Relators' continued refusal to comply with the order compelling discovery dated December 6, 1990, until finally the court had little other alternative than striking the pleadings. The choice of sanctions is left to the sound discretion of the trial court. *Id.* at 917. After considering the record in this case, along with the guidelines provided in the majority and concurring opinions in *Transamerica,* I cannot find that the court's imposition of the "death penalty" was arbitrary or unreasonable, but to the contrary, it follows the rules and suggested guidelines and appears to be reasonable under the circumstances of this case.