USF&G v. Rossa 















IN THE
TENTH COURT OF APPEALS
 

No. 10-91-194-CV

     UNITED STATES FIDELITY
     AND GUARANTY COMPANY,
                                                                                              Appellant
     v.

     TOMMY ROSSA AND PENNY ROSSA,
                                                                                              Appellees
 

From the 18th District Court
Johnson County, Texas
Trial Court # 279-90
                                                                                                    

O P I N I O N
                                                                                                    
            United States Fidelity and Guaranty Company (USF&G) appeals the imposition of a
"death penalty" sanction—the striking of USF&G's pleadings and the entry of a $1,000,000 default
judgment against it—for alleged discovery abuse. Using the guidelines established by the Supreme
Court in Transamerican Natural Gas Corporation v. Powell, we hold that the sanction was not
"appropriate." See Transamerican Natural Gas Corporation v. Powell, 811 S.W.2d 913, 916 n.4.
(Tex. 1991). The judgment is reversed, and the cause is remanded for further proceedings in
accordance with this opinion.
BACKGROUND
      Tommy Rossa was a passenger in a vehicle involved in an automobile accident with Thad
Felton in December 1989. He and Penny, his wife, sued Felton in June 1990. The primary
insurance carrier, Farmers Insurance Company, tendered its policy limits of $25,000. While the
Rossas' suit against Felton was pending, they discovered that USF&G had issued a $1,000,000
commercial-business policy to Felton's employer, Cletex, and that Felton, who was general
manager and secretary-treasurer of Cletex, may have been listed on the policy as an additional
insured.  
      Barbara Cross, USF&G's supervising claims adjuster in Fort Worth, interviewed Felton in
January 1990. He told her that he had been driving a 1989 Jeep Cherokee owned by Shelly Wood,
with her permission, and that when the accident occurred he was not driving in the course and
scope of his employment. Thus, Cross believed that Cletex had no liability. She did no further
coverage investigation until April, even though Felton had also told her that his 1988 Ford Taurus
was listed on the USF&G policy, and she was aware that Tommy Rossa had sustained serious
injuries in the accident. Felton also told Cross that his only liability coverage was with USF&G,
and she later confirmed that he was an insured under the USF&G policy.
      Upon learning of the USF&G policy, the Rossas' attorney wrote to USF&G offering to
discuss a settlement. USF&G then hired a law firm to represent Felton, sent a reservation-of-rights letter to the defense attorney that Farmers Insurance had provided, and hired an accident
reconstructionist. On May 4, five days before the scheduled trial, USF&G decided that its policy
afforded no coverage for the accident and notified all parties that it was withdrawing from Felton's
defense. Under the circumstances, Felton agreed to a $1,500,000 judgment in favor of the Rossas
in exchange for their covenant not to execute.
      On July 5, the Rossas filed this action, seeking to establish that USF&G's policy afforded
Felton $1,000,000 in liability coverage. They named Felton as a defendant, and he filed a cross-claim against USF&G for breach of its duty of good faith and fair dealing. The Rossas asserted
rights as third-party beneficiaries to the USF&G policy proceeds and, as judgment creditors of
Felton, to any additional damages Felton might recover on his bad-faith claim. USF&G filed a
declaratory-judgment action in federal court against Felton, asking that the federal court declare
that the policy did not cover him for the accident. It also filed a petition to remove this case to
the federal court, where it remained for eight months before the court remanded it.
       The Rossas initiated discovery following the remand, attempting to determine the basis for
USF&G's denial of coverage, whether USF&G had waived or was estopped to assert a no-coverage defense, and whether it had acted in bad faith toward Felton. After USF&G responded
to the discovery requests, the Rossas filed a motion to compel and for sanctions under Rule 215,
asserting that the responses were frivolous, evasive, non-responsive, and made for delay only, and
that no specific privilege or exemption had been asserted. There had been no other discovery
disputes between the parties. 
      At the hearing in June 1991, Cross was questioned about the facts of the accident, the extent
of USF&G's investigation, and its basis for denying coverage. In some instances, when her
responses differed from USF&G's written responses, she attributed the written answer to the
advice of counsel. She also acknowledged that some responses were deficient. For example,
Cross testified that, when it withdrew from Felton's defense, USF&G knew what its position
regarding coverage was and what it would be if further litigation was filed. Interrogatory number
two asked about USF&G's contentions regarding coverage. USF&G's answer referred the Rossas
to its pleadings then on file—i.e., a general denial, to the reservation-of-rights letter, and to the
policy itself. Although the reservation-of-rights letter was supposed to have been attached to the
responses as an exhibit, it was not. Cross admitted that she did not think that the answer to
interrogatory number two described in sufficient detail each defense or contention of USF&G or
that it set forth a factual basis for every defense or contention. The Rossas had requested that
USF&G admit that Felton was driving the Jeep Cherokee at the time of the accident with the
vehicle owner's permission. USF&G had responded: "This defendant is unable to admit or deny
this request. To this point, sufficient discovery has not yet been conducted in this case to
determine whether or not Felton had the permission of Shelly Wood to drive the vehicle at the time
of the accident . . . . And this defendant does not have sufficient independent knowledge to admit
or deny this request." However, Cross testified that the statement she took from Felton indicated
that he had permission from Wood to drive the Jeep.
      At the conclusion of the sanction hearing, the court stated:
I fail to see in this case where you've already got a judgment over here for $1,500,000
why we don't pay a little closer attention to what we're doing. I think you have been playing
hide and seek. You've used unnecessarily frivolous, dilatory tactics. You've abused your
discovery process, and the court hereby strikes your pleadings and enters a default judgment
against the defendant USF&G with all interest. That's all. Draw me up an order.

In the judgment, the court found that USF&G had abused the discovery process by failing to
properly and timely comply with the plaintiffs' discovery requests and that the responses were
"evasive, incomplete, unreasonably frivolous and made for the purpose of delay." The judgment
struck USF&G's pleadings, deemed the plaintiffs' material allegations admitted, and awarded
liquidated damages in the amount of $1,000,000—the limit of USF&G's policy. The Rossas'
claims against USF&G were then severed from the remaining claims. 
      The Supreme Court issued the opinion in Transamerican one day after the sanctions hearing. 
Forty-one days later the court made voluminous findings, tracing the language of Transamerican,
in support of the judgment imposing the sanction.
RULE 215 SANCTIONS
      USF&G attacks the imposition of the "death penalty" sanction and the entry of the default
judgment as constituting an abuse of discretion. 
      A sanction imposed for discovery abuse must always be "appropriate" under the circumstances
of the specific case. See Tex. R. Civ. P. 215; Transamerican, 811 S.W.2d at 916 n.4. In
Transamerican, the Supreme Court said "appropriate" and "just" are equivalent standards. 
Transamerican, 811 S.W.2d at 916 n.4. We use a two-step analysis to determine if a sanction is
"appropriate." First, we ask whether there is a direct relationship between the offensive conduct
and the sanction imposed; that is, was the punishment imposed upon the true offender and directed
at remedying the prejudice caused by the discovery abuse? Second, were less severe sanctions
available which would promote compliance? See id. at 917. The punishment should fit the crime. 
Id.; Pelt v. Johnson, 818 S.W.2d 212, 216 (Tex. App.—Waco 1991, no writ). A discovery-abuse
sanction should be the "least severe sanction adequate" to achieve its legitimate purpose. Pelt, 818
S.W.2d at 216 n.1. The court should resolve all doubts in favor of reaching a decision on the
merits. Scarborough v. Eubanks, 747 F.2d 871, 878 (3rd Cir. 1984); Hanley v. Hanley, 813
S.W.2d 511, 518 (Tex. App.—Dallas 1991, no writ). Ultimate penalties, such as exclusion of
essential evidence, striking pleadings, dismissal, and default, should be "the exception rather than
the rule." Lassiter v. Shavor, No. 05-91-00452-CV (Tex.App.—Dallas, Jan. 21, 1992, n.w.h.).
       We review a "death-penalty" sanction by the same standard as any other sanction imposed
under Rule 215—abuse of discretion. See Tex. R. Civ. P. 215; Koslow's v. Mackie, 796 S.W.2d
700, 704 (Tex. 1990); Bodnow Corp. v. City of Hondo, 721 S.W.2d 839, 840 (Tex. 1986); Pelt,
818 S.W.2d at 216. A trial court abuses its discretion if "it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law." Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 917 (Tex. 1985); A clear failure by the trial court to analyze or apply
the law correctly will constitute an abuse of discretion. Walker et al., v. The Honorable Anne
Packer, 35 Tex. Sup. Ct. J. 468, 472 (February 22, 1992). 
      Although trial judges have been encouraged to file findings of fact and conclusions of law
when sanctions are imposed, such findings are not the same as those contemplated by Rules 296
and 297 because findings made under those rules are made in a "case tried . . . without a jury." 
Tex. R. Civ. P. 296, 297; Transamerican, 811 S.W.2d at 919 n.9. Factors other than "evidence"
actually introduced at the sanctions hearing may be justifiably considered by the court in its
decision to impose a sanction. During appellate review, the entire record, including the
"evidence," arguments of counsel, the written discovery on file, and the circumstances
surrounding the party's alleged discovery abuse, must be examined. Abcon Paving, Inc. v.
Crissup, 820 S.W.2d 951, 954 (Tex. App.—Fort Worth 1991, no writ). Findings filed in a
sanctions context should not be given the same weight as findings made under Rules 296 and 297. 
Tex. R. Civ. P. 296, 297; Goff v. Branch, 821 S.W.2d 732, 738 (Tex. App.—San Antonio 1992,
no writ). Thus, we are not limited to a review of the "sufficiency of the evidence" to support the
findings made; rather, we make an independent inquiry of the entire record to determine if the
court abused its discretion in imposing the sanction. See Johnson, 700 S.W.2d at 918; Lassiter,
No. 05-91-00452-CV (Tex. App.—Dallas, January 21, 1992); Abcon Paving, 820 S.W.2d at 954. 
      Before choosing a sanction to correct discovery abuse, a court must weigh: 1) the extent of
the party's personal responsibility; 2) the prejudice to the adversary caused by the discovery
abuse; 3) any history of dilatoriness; 4) whether the offending conduct was willful or in bad faith;
5) the effectiveness of sanctions other than dismissal, which requires an analysis of alternative
sanctions; and 6) the merit of the claim or defense. See Poulis v. State Farm Fire and Casualty
Co., 747 F.2d 863, 868-70 (3rd Cir. 1984); Pelt, 818 S.W.2d at 216-17. To assure that the
extreme sanction of dismissal or default is used only in the instances where justified, no one factor
or group of factors is given undue emphasis and no factor or factors will be considered to be
adequate absent consideration of all the others. Poulis, 747 F.2d at 870. Sanctions which are so
severe that they prevent presentation of the merits of the case should not be assessed absent a
party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under
the rules. National Hockey Club, Inc. v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642-43,
96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); Transamerican, 811 S.W.2d at 918; Hanley, 813
S.W.2d at 517.
      Although the court pronounced judgment before Transamerican set forth the definitive
guidelines for imposition of the ultimate sanction, we must use those guidelines in our review of
the sanction on appeal. See Transamerican, 811 S.W.2d at 917. The record does not reflect that
USF&G acted with flagrant bad faith or with callous disregard of its responsibilities for discovery
under the rules, that the court evaluated the relative culpability of USF&G and its attorneys, that
the Rossas were irreparably prejudiced by USF&G's responses, or that USF&G was dilatory. 
Even assuming that the court correctly considered USF&G's removal to federal court as made for
delay only, the Rossas could have proceeded with discovery during that eight-month interval. 
Also, the record does not reflect that the court analyzed lesser sanctions that may have remedied
the problem. See Transamerican, 811 S.W.2d at 919; Pelt, 818 S.W.2d at 218. Although some
of USF&G's answers to the Rossas' discovery were evasive and nonresponsive in light of the
information the adjuster had at her disposal, the court could have ordered USF&G to file amended
responses. See Tex. R. Civ. P. 215(1)(b). It could have corrected the abuse by imposing a
monetary sanction, taking into account the expense and attorney's fees unnecessarily incurred by
the Rossas. See id. at 215(2)(b)(2). Finally, the court made no analysis which would support the
conclusion that USF&G's defenses were meritless and thus justifiably struck. See Transamerican,
811 S.W.2d at 917-18; Jacques v. Texas Employers' Ins. Ass'n, 816 S.W.2d 129, 131 (Tex.
App.—Houston [1st Dist.] 1991, no writ).
DUE-PROCESS REQUIREMENTS
       USF&G also attacks the striking of its pleadings as a violation of its state and federal due-process rights. The imposition of sanctions is limited not only by the Transamerican analysis
under Rule 215 but also by the constitutional requirements of due process. U.S. Const. amend.
V, XIV; Tex. Const. art. 1, § 19; Fjelstad, 762 F.2d at 1338; Hanley, 813 S.W.2d at 517. 
Thus, due-process requirements are an additional obstacle to the imposition of sanctions that
preclude presentation of the merits of a claim or defense.
      Texas courts must afford litigants federal standards of due process. Peralta v. Heights Medical
Center, Inc., 485 U.S. 80, 84, 108 S.Ct. 896, 899-900, 99 L.Ed.2d 75 (1988). "Due process
limits the imposition of the severe sanctions of dismissal or default to `extreme circumstances' in
which `the deception relates to the matters in controversy' and prevents their imposition `merely
for punishment of an infraction that did not threaten to interfere with the rightful decision of the
case.'" Fjelstad, 762 F.2d at 1338 (quoting Wyle v. R.J. Reynolds Indust., Inc., 709 F.2d 585-89
(9th Cir. 1983). 
      The death penalty should never be imposed unless a party's egregious hindrance of the
discovery process justifies a presumption that its claims or defenses lack merit. Transamerican,
811 S.W.2d at 917-18; McConnell v. Memorial Const. Co., 821 S.W.2d 166, 167-68 (Tex.
App.—Houston [1st Dist.] 1991, no writ). After a review of the entire record, we do not believe
that USF&G's conduct justified such a presumption.
CONCLUSION
      Imposition of the "death penalty" did not meet the Transamerican guidelines. See
Transamerican, 811 S.W.2d at 917; Poulis, 747 F.2d at 868-70; Pelt, 818 S.W.2d at 216-17. 
This resulted in an abuse of discretion requiring reversal of the judgment. See Walker, 35 Tex.
Sup. Ct. J. at 472 (February 22, 1992). 
      Tactics such as those used by USF&G or its trial counsel only undermine the process that
discovery was meant to aid and should not be condoned or go unpunished. Under these
circumstances, however, the extent of the hindrance to discovery did not justify a presumption that
USF&G's defenses lacked merit, and the discovery sanctions imposed should not have been used
to adjudicate the merits of its defenses. See U.S. Const. amend. V, XIV; Tex. Const. art. 1,
§ 19; Fjelstad, 762 F.2d at 1338; Hanley, 813 S.W.2d at 517.
      We reverse the judgment and remand the cause for further proceedings consistent with this
opinion. 
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and remanded
Opinion delivered and filed April 22, 1992
Publish