NO












 
 
 
 
 
 
  
 
 
 
 
  
 


NO. 12-09-00091-CV

 

                         IN
THE COURT OF APPEALS

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

 

LAVERNA SELLS,

APPELLANT                                                     '                 APPEAL
FROM THE 

 

V.                                                                         '                 COUNTY
COURT AT LAW #2

 

EARL DROTT,                                                   '                 SMITH
COUNTY, TEXAS

APPELLEE







OPINION

            LaVerna
Sells appeals from a default judgment entered in favor of Earl Drott in his
suit for specific performance of a contract.  Sells raises three issues
contending that the trial court erred in striking her pleadings, quashing the
notice of deposition of her physician, and refusing to consider the physician’s
affidavit.  We reverse and remand.

 

Background

            Sells,
who was born in 1924, lives in Houston, Texas.  Sells and George W. Lampkin,
Jr. owned some land in Smith County.  They each executed a power of attorney
regarding their land, giving LaCheryl Stebbings authority to

 

execute, acknowledge, and deliver contract(s) and/or
verbal response for listing with a real estate representative or expressed
interested individual buyer relative to my land owned within the William Luce
and Ventura Tejada Tracts, and any interest therein.  If applicable, LaCheryl
R. Stebbings/AGENT is authorized to present necessary documents on my behalf,
such as deed, lien notices, or other indebtedness or obligations subject and
pertaining to property associated with and conducive to listing the subject
land. 

 

2006
Litigation

In
2003, Drott and Stebbings executed a contract for the sale of the land, but
Sells and Lampkin refused to accept payment of the purchase price.  Drott filed
suit against Sells and Lampkin for specific performance in 2006.  Sells filed a
pro se answer and an amended answer that included an affirmative defense. 
Sells also filed separate responses to Drott’s request for admissions, request
for disclosure, request for answers to interrogatories, and request for
production.  Her responses were made up primarily of objections.  

Drott
secured a default judgment against Lampkin, who failed to answer, and Drott’s
claims against Lampkin were severed.  Lampkin did not appeal.  Neither Sells nor
Lampkin appeared at the hearing on Drott’s motion to sever.  Sells’s daughter,
who is not an attorney, appeared in court as Sells’s “representative.”  The
trial court apparently determined that Sells’s responses were signed by Sells’s
daughter.  Consequently, the trial court struck Sells’s pleadings and entered a
default judgment against her on October 19, 2006.  The trial judge also
made it clear that he was going to forward a copy of the transcript of the
hearing to the district attorney for “potential prosecution.”  Sells obtained
counsel, J.B. Peacock, Jr., and appealed the default judgment to this court. 
We affirmed the judgment on July 18, 2007.  See Sells v. Drott,
259 S.W.3d 194 (Tex. App.– Tyler 2007), rev’d, 259 S.W.3d 156 (Tex.
2008).  She then appealed to the supreme court, which reversed after concluding
that the trial court did not give her notice and an opportunity to present
evidence before striking her answers and granting the default judgment.

2008
Motion for Next Friend

            Before
the supreme court’s mandate issued on August 22, 2008, Drott’s counsel, Howard
Britain, demanded compliance with Drott’s prior discovery requests.  During a
July 31, 2008 teleconference, Peacock had said he would amend or supplement the
previous pro se responses as necessary when the mandate issued.  However,
Britain filed a motion to compel and for sanctions on the same day as the
teleconference.  On September 4, 2008, Sells filed a motion for appointment of
her son, Lynn Sells, as her “next friend.”  In the motion, she explained that
she is eighty-four years old and has had four strokes since 2001.  She stated
that she has slurred speech, short term memory loss, and cannot “get around”
very easily.  She asserted that she is “physically incapable of managing her own
interests and the demands of this litigation.”  The motion is supported by a
verification signed by Sells on August 26, 2008, stating that the information
in the motion is true.  It is also supported by the affidavit of Lynn Sells in
which he speaks of his mother’s physical condition.  He states in his affidavit
that “[m]entally [Sells] is fairly competent” but suffers from short term
memory loss.  He explains that, “[b]ecause of these disabilities,” his mother
asked him to appear for her in this litigation.  He states that she is
physically incapable of managing her own interests and the demands of the
litigation.  The accompanying certificate of conference states that Sells’s
attorney made three attempts to discuss the motion with Drott’s attorney, on August
26, September 2, and September 3, but opposing counsel did not respond.  On
September 12, Sells’s attorney set the motion for hearing on October 9.

Drott’s
Discovery Efforts

            On
September 24, Britain sent a letter to Sells’s counsel requesting supplemental
answers to his discovery requests by October 1 and warning that if they were
not received, he would set the hearing on his motion to compel and for
sanctions for October 9.  Along with the letter, he served a subpoena for
Sells to be present at the October 9 hearing, in order for him “to inquire why
it is necessary for her to have a ‘next friend’ and to explain her failure to
respond to [Drott’s] discovery requests.”  Along with the letter and subpoena,
he served notice of his intent to take Sells’s deposition on October 10,
explaining that it was “imperative” that he “immediately depose her so that we
do not have age-related issues concerning her memory.”  He went on to explain
in the letter that “the past track record, in terms of the delays to date in
getting things done, combined with Ms. Sells[’s] alleged physical and/or mental
status, gives [him] a sense of urgency that [he] might not otherwise have in a
case.”  Britain did not first consult with Sells’s counsel before setting the
date for the deposition.  Peacock’s co-counsel, Cynthia Shanklin, later
explained to the trial court that this letter was the first indication that
Drott would contest appointment of a next friend.  At that time, she began
trying to find out what dates Dr. Chiu, Sells’s physician, would be available
for a deposition.

Sells’s Response

            On
September 26, Sells provided supplemental responses to Drott’s request for
disclosure and request for production.

            On
September 29, Shanklin sent a letter to Britain cancelling the October 9 next
friend hearing because she wanted to get Sells’s medical records and Dr. Chiu’s
deposition before the hearing.  She explained that Dr. Chiu would be out of
town until October 6.  Sells served discovery requests on Drott on September
30.  However, the attorneys agreed that those answers would not be provided
until after Sells had completed the discovery Drott had requested.  On October
1, Shanklin filed a motion to quash the October 10 deposition of Sells.  The
motion was signed on September 29 and explains that there was concern for
Sells’s health and that she was not physically able to travel or testify.  Shanklin
said she was in the process of getting the doctor’s deposition and the medical
records to determine whether Sells’s medical condition was such that the stress
of testifying would pose a potential health risk.              

On
October 9, Shanklin filed a motion for continuance, asking the court to
postpone the hearing scheduled for that day on Drott’s motion to compel, her
motion for appointment of a next friend, and her motion to quash Sells’s
deposition until she could obtain a physician’s testimony regarding Sells’s
mental capacity and physical capabilities.  Attached to this motion was a short
letter from a nurse at Methodist Neurological Institute in Houston, dated
October 2, 2008, stating that Sells had been a patient there since 2001, has
been seen by Dr. David Chiu, and that the nurse and Chiu “feel that she is not
mentally capable of tolerating court proceedings or depositions.”

First
Post-Remand Hearing

            Sells
was not present at the October 9 hearing.  The trial court denied the motion
for continuance, apparently because a local rule requiring a certificate of
conference was not complied with.  Shanklin explained that the interrogatories
had been answered, but not signed because it had not yet been determined
whether Sells was competent to sign them.  Britain said he did not know until
that day that Sells was unable to sign interrogatories.  Britain argued that
Drott had been asking for discovery for two years and that all they got was a
“roadblock” every time they tried to move forward.  Shanklin argued that they
wanted Sells’s treating physician to determine if Sells could give a deposition
before presenting her for a deposition.  The court gave Sells until October 23
to answer the interrogatories and refused to quash the October 10 deposition.

Scheduling
Difficulties

            On
October 9, the court set the next friend hearing for October 28.  Also on that
day, Shanklin sent a letter to Britain confirming a telephone conversation of
that day in which she informed him that Sells would not appear for the
scheduled October 10 deposition due to concerns for her health.  On October 10,
Shanklin filed a motion for rehearing asking the court to reconsider the motions
ruled on at the October 9 hearing.  She wanted more time to get the doctor’s
deposition because Sells’s mental capacity was at issue and there might be
serious health risks.  On that same day, Shanklin sent Britain a letter stating
that Dr. Chiu would be available for his deposition on October 17, 22, and 23. 
Also on October 10, Britain filed Drott’s motion to compel Sells’s deposition
because she did not appear.  He set the motion for hearing on October 14.  On
October 13, Shanklin made a written request for Sells’s medical records.    

Also
on October 13, Britain responded to Shanklin’s October 10 letter, stating he
would be out of town from October 15 through October 24.  He attached a copy of
the January 22, 2008 letter by which he had notified the court and numerous
attorneys that he would be unavailable on certain dates in 2008.  Britain was
not hired by Drott until July 2008.  Therefore, he did not include Shanklin or
Peacock on the original list of attorneys to whom he sent the notice in January. 


Second
Post-Remand Hearing

On
October 14, a hearing was held on Drott’s motion to compel Sells’s deposition
and for sanctions.  Shanklin explained that she was still trying to schedule
Dr. Chiu’s deposition and had requested medical records.  Lynn Sells testified
that Sells has had four strokes and a fractured back.  She has short term
memory loss and needs family members to make her decisions.  He feared that
testifying would create serious anxiety for her and possibly cause her to have
another stroke.  He described her as “fairly competent,” and said she keeps her
own bank account, with some monitoring.  She had been taken from her home in
Houston to Dallas to visit family once in the past two years.  Lynn also
testified that, since her last stroke, in 2006, she has traveled maybe two or
three times a year.  The court sustained Britain’s objection to Lynn Sells’s
affidavit, which covered much of the same information as his testimony,
commenting that Lynn Sells is not qualified to evaluate Sells.  Noting that the
record did not show Sells’s physical or mental condition, the court granted
Drott’s motion to compel and for sanctions.  The court ordered Sells to pay
$2,500.00 by October 29 and set her deposition for October 30.

Medical
Evidence

On
October 17, Shanklin sent a letter to Britain notifying him that Dr. Chiu was
available to be deposed on October 28 and 31 and November 7, 14, 18, and 21. 
On October 23, Peacock filed a motion for continuance of the next friend
hearing that was set for October 28 because he was still unable to get Dr.
Chiu’s deposition or the medical records.  On October 28, Peacock filed a
motion to reconsider Drott’s motion to compel the deposition of Sells and for
sanctions.  In support of the motion, he attached the affidavit of Dr. Chiu,
which was signed on October 22.  The affidavit and a copy of Sells’s medical
records were received in Peacock’s office on October 27.  In the affidavit, Dr.
Chiu states as follows:

 

Laverna Sells has been a patient of mine since January
of 2001.  Ms. Sells has a long history of hypertension, diabetes and has
suffered from multiple strokes, the first of which occurred in January 2001. 
Ms. Sells suffered from her last stroke February 2006.  As a result of the
strokes, Ms. Sells suffers from vascular cognitive impairment and has gait
difficulty.

In my opinion, based upon my training as a medical
doctor board certified in neurology, Ms. Sells is not mentally nor physically
capable of enduring the stress of testifying at a deposition or trial, or appearing
for a trial.

 

 

The medical
records indicate that Dr. Chiu recommended a neuropsychological evaluation on
October 13.  The trial court denied the motion to reconsider on October 29.  

            On
October 30, Sells paid the $2,500.00 sanction, but did not appear for the
deposition.  Drott immediately filed his second motion to compel her deposition
and his second motion to compel answers to interrogatories.  On November 3,
Drott received Sells’s supplemental responses to his request for
interrogatories that were due on October 23.  On November 4, Peacock
noticed his intention to take the oral deposition of Dr. Chiu on November 21 in
Houston.  In the notice, he explained that, on October 17, he had provided
Britain with the dates Dr. Chiu was available, but Britain never responded or
agreed to any date for Dr. Chiu’s deposition.

Third
Post-Remand Hearing

            A
hearing was held November 5 to address Sells’s motions for reconsideration and
for rehearing.  That morning, Sells moved for continuance of the hearing, but
the court denied her motion because it was not timely.  Peacock offered both
the Chiu affidavit and Sells’s medical records. The court admitted the medical
records but found the affidavit to be hearsay.  The court commented that it
looked as though Sells was taking every chance to delay.  Peacock explained
that he was not aware there was a problem until Drott subpoenaed Sells for a
deposition.  At that point, the family said she would not be able to stand up
under a deposition.  Additionally, he received the October 2 letter from the
nurse that put them on notice that there was a problem.  The trial judge said
the way to find out if Sells could handle the deposition was to depose her. 
The judge commented further that he did not like the way Sells’s attorneys had
handled the situation.

Also
at the November 5 hearing, Drott’s motion to compel answers to interrogatories
was heard and granted, as was his motion to compel Sells’s deposition.  The
court ordered Sells to answer the interrogatories by November 15 and to pay
$2,000.00 in sanctions.  Additionally, the court ordered Sells to appear for
her deposition on November 11 and to pay $1,562.50 in sanctions.  After the
court made an oral ruling, the following exchange occurred:

 

 

Peacock:  Right.  If she’s incompetent that might be
evident from the deposition and what the Court is ruling makes sense.  The
problem I’ve got though is her doctor is saying and these records bear it out
that she could have another stroke if I present her in front of Mr. Britain and
a court reporter for her deposition.  That’s the risk.  That’s the problem.

 

The Court:  I well-understood.  And I consider it’s
not generally a good thing to kill the party to the lawsuit in the process of
the lawsuit.  But the logical result [sic] to find out the condition of the
lady is a face-to-face, one-on-one, to try to do the deposition, which is a
whole lot [sic] stressful than appearing in the courtroom.

 

Peacock:  If I may, Your Honor, doesn’t it make more
sense to take her doctor’s deposition and let him tell us, give his opinion
about whether she could present?  That’s all I’m asking.

 

The Court:  I think the quickest and fastest way is to
try to take the lady’s deposition.  Let’s cross this bridge once and for all,
and this is the third time.

 

 Peacock:  But I’m so afraid, Your Honor, if we do
that – if she has another stroke, she could die on the spot and she’s had four
strokes already.  

 

The Court:  I understand that.  That’s why I spent all
the time looking at the records.  It’s a calculated move, and that’s pretty
much what everything always is.

 

 

Drott’s
Motion to Quash

Two
days later, Drott moved to quash Sells’s notice of intention to take Dr. Chiu’s
November 21 deposition.  He reasoned that since Sells had been ordered to
appear for her deposition on November 11, the later scheduled doctor’s
deposition is “untimely, irrelevant, unnecessary, burdensome, and not
reasonably calculated to lead to the discovery of admissible evidence.” 
However, Sells did not appear for her deposition on November 11 and, on
November 12, Drott filed his third motion to compel her deposition and for
sanctions.

Further
Pleadings and Motions

On
November 13, Sells filed her second amended answer and a counterclaim for
trespass to try title.  She asked for an injunction against Drott, prohibiting
him from obstructing access to her property because he allegedly built a fence
landlocking her property.  She also filed a motion to reconsider the court’s
most recent adverse rulings.  These motions were set for hearing on November
19.  On that date, Drott filed his third motion to compel answers to
interrogatories and for sanctions because he did not receive answers that were
due November 15.  Because Sells did not get sufficient notice of that motion,
the court postponed the hearing until December 1.  The court commented that
“[i]t does look like I’m being hit with stalling on trying to get that lady.” 
On November 24, Sells signed and served her amended response to Drott’s
request for answers to interrogatories.  

Fourth
Post-Remand Hearing

At
the December 1 hearing, Britain conceded that Sells’s amended responses were
responsive.  Yet he argued that death penalty sanctions were appropriate
because Sells failed to obey five court orders and filed a counterclaim after
claiming to be incompetent.  Peacock argued that the counterclaim was not
evidence of capacity and, if he did not plead it, he would be guilty of
malpractice.  The court announced that “[t]his is going to get resolved today”
and “I intend to end this issue today one way or the other.”

At
the December 1 hearing, the court denied Sells’s motions for rehearing and for
reconsideration.  The court granted Drott’s third motion to compel answers to
interrogatories and ordered Sells to pay $1,500.00 in sanctions.  The court also
granted Drott’s third motion to compel Sells’s deposition and ordered her to
pay $1,500.00 in sanctions.  The trial court granted Drott’s motion to strike
Sells’s pleadings and struck her answers and her cross action.  The trial court
also granted Drott’s motion to quash Dr. Chiu’s deposition as moot.  Drott
testified that he sued Sells for specific performance of a contract to purchase
Sells’s land at $600.00 an acre. He had previously tendered $9,683.40 to the
court’s registry.  He testified that after he filed his lis pendens in this
case, Sells tried to convey the property to her children.

The
Default Judgment

The
written order, signed on December 18, 2008, includes several statements and
findings.  The court found that Sells had engaged in a pattern of discovery
abuse and that the credible evidence indicates that she is both mentally and
physically capable of appearing for depositions, responding to discovery
requests, and complying with discovery orders but refused to do so.  The court
stated that it had considered all possible alternatives to rendering a death
penalty sanction and noted that it had tried lesser sanctions.  The court found
that Sells’s actions indicated a blatant disregard for the court’s authority
and that no lesser sanction than the death penalty sanction would promote
compliance with the rules.  The court explained that it had considered both the
role of Sells and of defense counsel in the discovery abuse.  The court noted
that Sells’s refusal to appear for her deposition, answer discovery, and pay
sanctions were acts of personal misconduct on the part of Sells for which
sanctions should be visited solely on her and for which the court declined to
extend responsibility to defense counsel.  The court found that filing a
counterclaim seeking affirmative relief was inconsistent with Sells’s alleged
inability to respond to discovery requests or appear for her deposition.  The
court found that Sells’s pattern of discovery abuse and delay justified a
presumption that her claims and defenses lack merit and that Drott would be
unable to adequately prepare for trial without the material evidence provided
by Sells’s deposition testimony and discovery responses.  Thus, the court
determined that Drott had been irreparably harmed by Sells’s discovery abuse
and the death penalty sanction was directed against that abuse.

The
court entered a default judgment against Sells, and all matters set forth in
Drott’s first amended petition were deemed established as a matter of law.  The
court ordered that Drott was entitled to ownership of the four tracts of land
at issue and that the judgment would serve as a conveyance of Sells’s interest
in the property.  The court also ordered Sells to pay Drott’s previously
incurred attorney’s fees in the amount of $11,615.00, his future attorney’s
fees in the intermediate appellate court in the amount of $15,000.00, and his
future attorney’s fees in the supreme court in the amount of $10,000.00.  These
last two awards were not conditioned on Drott’s prevailing on appeal.  The
court also ordered Sells to pay the delinquent sanctions in the amounts of
$2,000.00, $1,562.50, $1,500.00, and $1,500.00 within thirty days of the date
of judgment.

 

 

 

Death Penalty
Sanctions

In
her first issue, Sells contends the trial court’s rulings were unreasonable and
arbitrary, and thus the court erred in striking her pleadings and entering a
final judgment in Drott’s favor.  She argues that she did not willfully absent
herself to avoid her deposition, did not willfully avoid written discovery, and
did not act in bad faith.  She contends she is infirm and unable to comply with
the deposition settings.  Further, she argues that since she never had a
contract to sell her land to Drott, she has a meritorious defense.  She asserts
that Drott ignored the fact that her medical condition was at issue and
demanded discovery.  She contends that her right to due process was violated
because she was not given an adequate opportunity to present evidence to
establish that she was unable to testify at trial or a deposition.  With regard
to written discovery requests, Sells asserts that she fully complied with those
requests, the sanctions were wrongfully assessed, and they should be set aside.


Standard
of Review

            If a
party fails to comply with proper discovery requests or to obey an order to
provide discovery, or abuses the discovery process, the court may, after notice
and hearing, impose appropriate sanctions.  Tex.
R. Civ. P. 215.2, 215.3.  The choice of authorized sanctions is within
the sound discretion of the trial court.  TransAmerican Natural Gas Corp.
v. Powell, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). 
However, any sanction imposed by the trial court must be just.  Tex. R. Civ. P. 215.2(b); Powell,
811 S.W.2d at 917.  There is a two prong standard for determining whether an
imposition of sanctions is “just.”  First, a direct relationship must exist
between the offensive conduct and the sanction imposed.  Powell,
811 S.W.2d at 917.  This means that a just sanction must be directed against the
abuse and toward remedying the prejudice caused the innocent party.  Id. 
Depending on whom the offensive conduct is attributable to, either the attorney
or the client might be sanctioned.  Id.  Second, just sanctions
must not be excessive.  Id.  A sanction imposed for discovery
abuse should be no more severe than necessary to satisfy its legitimate
purposes.  Id.  The court must consider the availability of less
stringent sanctions and whether such lesser sanctions would fully promote
compliance.  Id.

            The
imposition of very severe sanctions is limited by constitutional due process.  Id. 
Discovery sanctions cannot be used to adjudicate the merits of a party’s claims
or defenses unless a party’s hindrance of the discovery process justifies a
presumption that its claims or defenses lack merit.  Id. at 918. 
Sanctions that are so severe as to preclude presentation of the merits of the
case should not be assessed absent a party’s flagrant bad faith or counsel’s
callous disregard for the responsibilities of discovery under the rules.  Id. 
During appellate review of discovery sanctions, the entire record, including
any evidence, arguments of counsel, the written discovery on file, and the
circumstances surrounding the party’s alleged discovery abuse, must be examined. 
Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 852-53 (Tex. 1992)
(orig. proceeding).

Competing
Needs

            Sells
signed a verification on August 26, 2008, that she wanted her son, Lynn Sells,
as her next friend.  She filed her motion for the appointment of Lynn Sells as
her “next friend,” pursuant to rule of civil procedure 44, on September 4,
2008.  She was eighty-four years old at the time and had previously suffered
four strokes.  She described her impairments and said she is physically
incapable of managing her own interests and the demands of the litigation.  The
motion was accompanied by Lynn Sells’s affidavit in which he described his
mother’s physical problems and said she was “mentally fairly competent.” 
Peacock’s certificate of conference stated that he attempted to contact Britain
to discuss the merits of the motion on three separate occasions and Britain did
not respond.  Peacock set the motion for hearing on October 9.

            On
September 24, Britain notified Peacock that he would set his motion to compel
and for sanctions regarding the written discovery for October 9 and issued a
subpoena commanding Sells to appear and testify at the October 9 hearing.  He
also served Peacock with notice of his intention to take Sells’s deposition on
October 10 without first discussing an agreed date.  Britain wanted to depose
Sells immediately due to age-related memory concerns.  He explained that he had
a sense of urgency due to previous delays and Sells’s “alleged physical and/or
mental status.”

            Peacock
cancelled the scheduled next friend hearing because he wanted to first obtain
medical records and Dr. Chiu’s deposition to use as evidence in support of his
motion.  Peacock filed a motion to quash the deposition and for a protective
order, arguing that Sells was not physically able to travel or testify.  He
asked that her deposition be postponed until it could be determined if the
deposition posed a health risk to Sells.

            At
the October 9 hearing, Shanklin explained that they had received a letter from
a nurse who works for Dr. Chiu, dated October 2, 2008, that first alerted them
to a problem with Sells’s mental capacity.  That letter was admitted for record
purposes only.  Britain argued that he was entitled to ascertain by questioning
Sells whether or not she had a competency issue.  On that same day, the court
gave notice that the next friend hearing had been reset to October 28.  On
October 10, Peacock sent a letter to Britain informing him that Dr. Chiu would
be available for his deposition on three different dates in October.  Britain
informed Peacock that he would be out of town on those dates.  Peacock later
learned that Dr. Chiu was available on six additional days in October and
November, but Britain never agreed to any date for Dr. Chiu’s deposition.  At the
October 14 hearing, Lynn Sells testified, describing his mother’s condition. 
He said she was fairly competent but forgetful and needed her family to make
her decisions.  He did not believe that she was able to go to court.  He said
testifying would create “serious anxiety” for her, and he was afraid she would
have a stroke.

            Texas
Rule of Civil Procedure 44 allows for “persons non compos mentis who have no
legal guardian” to sue and be represented by a “next friend.”  Tex. R. Civ. P. 44.  Rule 44 gives a
next friend the same rights “concerning such suits” as a guardian has, which
necessarily include the ability to make any decision with respect to a lawsuit
on behalf of the incompetent person.  See id.; Tex. Prob. Code Ann. §§ 768, 774(a)(4)
(Vernon Supp. 2010).  Rule 44 provides further that a next friend may, with
court approval, compromise suits and agree to judgments.  Tex. R. Civ. P. 44.

It
is questionable whether a motion for next friend was the appropriate procedural
vehicle for raising the issue of Sells’s ability to withstand the deposition or
trial.  See Saldarriaga v. Saldarriaga, 121 S.W.3d 493,
499 (Tex. App.–Austin 2003, no pet.).  Peacock was correct, however, in
attempting to address the issue.  See Tex. Disciplinary R. Prof’l
Conduct 1.02(g), reprinted in Tex.
Gov’t Code Ann., tit. 2, subtit. G, app. A (Vernon 2005) (Tex. State Bar
R. art. X, § 9) (“A lawyer shall take reasonable action to secure the
appointment of a guardian or other legal representative for, or seek other
protective orders with respect to, a client whenever the lawyer reasonably
believes that the client lacks legal competence and that such action should be
taken to protect the client.”).  But Peacock did not have the supporting
medical information when he filed the motion and did not obtain the doctor’s
affidavit until about two months later.  Further, Peacock’s attempts to obtain
the doctor’s testimony were unsuccessful.

Britain
subpoenaed Sells to appear at the October 9 hearing so that he could question
her about her need for a next friend.  He also scheduled her deposition for the
next day.  Sells did not attend the October 9 hearing.  In argument to the
trial court, Britain stated that Drott had been asking for discovery for two
years and had gotten a “roadblock” every time he attempted to move forward.  But
the record reveals that the first phase of this lawsuit lasted slightly over
two months in 2006.  Then it was on appeal.  The discovery process began again
when the supreme court’s mandate issued on August 22, 2008, which was
about six and one-half weeks before the day Britain made that statement.  The
trial court denied Sells’s motion to quash and ordered her to appear for the
deposition without addressing the issue of her mental or physical ability to
attend.  Britain immediately filed his motion to compel because she did not
attend the deposition on October 10.  The trial court granted that motion and
ordered Sells to pay sanctions and to appear for her deposition on October 30. 


When
Sells did not appear, Drott immediately filed a motion to compel and for
sanctions.  Two days after Peacock noticed Dr. Chiu’s November 21 deposition,
the trial court granted Drott’s motion to compel and ordered her to be deposed
on November 11.  Four days before the scheduled November 11 deposition of
Sells, Drott moved to quash Dr. Chiu’s deposition, effectively staying his
deposition until the court could consider the motion.  On November 12, Drott
again moved to compel Sells’s deposition because she did not attend on November
11.  Drott insisted upon Sells’s deposition even though he knew there was a
question about her health.  

Undue
Burden

By
accepting Drott’s position, the trial court failed to focus on the primary
matter to be resolved.  See Pelt v. Johnson, 818 S.W.2d 212, 218
(Tex. App.–Waco 1991, orig. proceeding).  When Sells filed her motion for
appointment of next friend, Drott and the trial court were put on notice that
there was a problem.  When Sells filed her motion to quash the subpoena and for
a protective order alleging health concerns, she was implicitly arguing that
her appearance in court or for the deposition constituted an undue burden.  The
rules of civil procedure dictate that the court must provide protection from
undue burden caused by issuance of a subpoena or by discovery methods.  See
Tex. R. Civ. P. 176.7, 192.4,
192.6(b).  To protect a movant from undue burden, or the invasion of personal
or constitutional rights, the court may make any order in the interest of
justice.  Tex. R. Civ. P.
192.6(b).  Moreover, courts may limit discovery pending resolution of threshold
issues like venue, jurisdiction, forum non conveniens, and official immunity.  See
id.; see also In re Alford Chevrolet-Geo, 997
S.W.2d 173, 181 (Tex. 1999) (orig. proceeding) (observing that rule for level 3
discovery control plan contemplates that plan may “phase discovery to resolve
discrete issues”).  

In
this case, the prudent course of action would have been for the trial court to
address the issues raised by Sells’s motion for the appointment of a next
friend.  We are hard pressed to say that any sanction for her refusal to attend
a deposition before addressing the health concerns can be justified.  But we
definitely cannot say that death penalty sanctions are justified.

TransAmerican
Factors

A
just sanction must be directed against the abuse and toward remedying the
prejudice caused to Drott.  See Powell, 811 S.W.2d at 917.  Here,
the “abuse” was Sells’s refusal to appear for a deposition.  The rationale for
her refusal was the determination that her health and the possibility of having
another stroke should take precedence over Drott’s need for her testimony until
after proper medical evidence could be presented.  We acknowledge the
possibility of prejudice from the dimming of Sells’s memory.  See Pelt,
818 S.W.2d at 217.  But the quality of her memory is necessarily subsumed by
her overall physical and mental health.  Drott argues that Lynn Sells’s
testimony indicates that Sells was able to attend her deposition.  We
disagree.  The fact that she could take a pleasure trip to visit family does
not mean she could withstand the stress of traveling to be deposed or to
testify in court.  Additionally, there was the concern of the stress caused by
giving testimony, either by deposition or in court.  

 The
death penalty sanction insured that Sells would not miss another deposition, or
have to risk a stroke, and more than compensated Drott for prejudice he endured
by not having a pretrial deposition of his defendant.  The trial court imposed
lesser sanctions before imposing the death penalty sanctions.  It ordered Sells
to pay fees of $2,500.00 and $1,562.50 for missing the first two deposition
dates.  It also ordered her to pay fees of $1,500.00 for missing the third
deposition date.  But since that sanction was ordered at the same time the
trial court imposed the death penalty sanctions, we do not consider the
$1,500.00 sanction to be prior use of a lesser sanction.  The court also ordered
her to pay $2,000.00 for failing to respond to interrogatories and an
additional $1,500.00 for failing to respond, although that sanction was imposed
after she had complied.  That sanction also was imposed on the same day the
death penalty sanction was imposed.  Therefore, like the sanction for failing
to appear at the last scheduled deposition, this sanction could not have been
imposed in an attempt to first test the persuasiveness of lesser sanctions. 
Imposition of the least severe sanction adequate to remedy the discovery abuse
would ordinarily result in an appropriate sanction and should advance the goal
of the elimination of “hard ball” discovery practices where the death penalty,
rather than true discovery in preparation for trial on the merits, is the
goal.  Id. at 216 n.1.

Finally,
we cannot say that Sells’s refusal to attend the deposition based on health
concerns justifies a presumption that her claims or defenses lack merit.  See
Powell, 811 S.W.2d  at 918.  Peacock made several attempts to secure
the doctor’s deposition, an act made more difficult because he also had to
address Drott’s attempts to obtain Sells’s deposition and written
interrogatories.  Although medical evidence should have been produced in early
September, Dr. Chiu was available to be deposed in mid October, two months
before the death penalty sanction was imposed on December 18.  Britain was
scheduled to be out of town on that date, but Peacock notified him that Dr.
Chiu was also available on October 28 and 31 and November 7, 14, 18 and 21. 
However, Peacock received no response.  The court did have before it Dr. Chiu’s
affidavit, which was based on his personal knowledge, in which he specifically
stated that Sells “is not mentally nor physically capable of enduring the
stress of testifying at a deposition or trial, or appearing for a trial.”  Peacock
consistently argued that Sells should not attempt to appear at a deposition or
at trial until after her mental and physical limitations had been ascertained. 
This is not an indication of bad faith on the part of Sells or callous
disregard for the responsibilities of discovery by Peacock.  See id. 
Further, during the time period when she refused to attend depositions, she
completed the written discovery.  Sells paid the $2,500.00 sanction for missing
the first scheduled deposition and had complied with all requests for written
discovery as of November 24.  

Death
penalty sanctions violate due process absent a party’s flagrant bad faith or
counsel’s callous disregard for the discovery process.  Id.  We
conclude that the sanction imposed on Sells, the loss of her right to defend
against Drott’s suit, did not relate to her failure to appear at her deposition. 
See F.N. Fausing Trading APS v. Estate of Barbouti, 851 S.W.2d
314, 317 (Tex. App.–Houston [1st Dist.] 1992, writ denied).  Striking Sells’s
pleadings and rendering a default judgment is more severe than necessary to
satisfy the legitimate purposes of sanctions for discovery abuse.  Given that
the ultimate purpose of discovery is to seek the truth, so that disputes may be
decided by what the facts reveal rather than by what facts are concealed, all
parties and the trial court should be concerned with learning the truth about
Sells’s health.  See Garcia v. Peeples, 734 S.W.2d 343, 347 (Tex.
1987) (orig. proceeding).  Here, the goal of the discovery process was
frustrated by the adversarial approach used.  Attorneys must balance common
sense and compassion with zealous advocacy.  The trial court should have
balanced the parties’ competing needs and rendered an order tailored to the
situation, allowing the parties to quickly get to the truth of the issue of
Sells’s health and ability to appear for a deposition rather than allowing
Drott to focus on Sells’s deposition.

The
death penalty sanction was an excessive sanction for Sells’s failure to appear
for her scheduled depositions.  Thus, the trial court abused its discretion in
imposing the death penalty sanction.  See Siegel v. Smith, 836
S.W.2d 193, 195 (Tex. App.–San Antonio 1992, writ denied) (holding denial of
protective order was abuse of discretion where party presented evidence that
failure to attend deposition was due to illness).  Similarly, the trial court
abused its discretion in assessing the monetary sanctions.  The rules allow for
the possibility that opposition to discovery may be justified, stating that a
court shall require a party failing to comply to pay reasonable expenses unless
the court finds that the failure was substantially justified.  Tex. R. Civ. P. 215.1(d), 215.2(b)(8). 
Here, Sells’s failure to comply with the requests and orders was justified. 
Thus, the trial court abused its discretion
when it ordered Sells, on three different occasions, to pay Drott’s
attorney’s fees for missing the scheduled depositions and, on two different
occasions, to pay Drott’s attorney’s fees for failing to complete
interrogatories as ordered.  We sustain Sells’s first issue.

 

Dr. Chiu’s
Affidavit

In
her third issue, Sells asserts the trial court erred in failing to consider Dr.
Chiu’s affidavit.  She argues that the affidavit was properly before the court
in support of her various motions through which she attempted to show she
should not be compelled to appear for a deposition without the court first
determining if she was mentally and physically capable of doing so.  We note
that, at the October 9 hearing, the trial court suggested Sells obtain an
affidavit from her doctor.  Sells relies on rule of civil procedure 199.6 as
authority, while Drott argues that rule 199.6 applies only to objections and
assertions of privilege made during a deposition.

We
review a trial court’s evidentiary rulings for an abuse of discretion.  Bay
Area Healthcare Group, Ltd. v. McShane, 239 S.W.3d 231, 234 (Tex.
2007).  A trial court abuses its discretion when it acts without regard to any
guiding principles.  City of Brownsville v. Alvarado, 897 S.W.2d
750, 754 (Tex. 1995).  The title of rule 199 is “Depositions Upon Oral
Examination.”  The title of rule 199.6 is “Hearing on Objections.”  Rule 199.6
refers to “an objection or privilege asserted by an instruction not to answer
or suspension of the deposition” and provides that the party seeking to avoid
discovery must present evidence by testimony or affidavit.  Tex. R. Civ. P. 199.6.  

Although
rule 199.6 does not explicitly cover a situation such as this where a party objected
to appearing for a deposition, we conclude that it implicitly applies here. 
Prior rule 166b(5) provided that a motion for a protective order made by any
person from whom discovery is sought may have exhibits attached, including
affidavits.  Tex. R. Civ. P. 166b(5)
(1983, repealed 1999).  Citing prior rule 166b(4), which allows affidavits in
support of claims of exemptions and immunity, the supreme court has allowed
affidavits in support of a motion for protective order seeking to limit use of
discovered documents.  Garcia, 734 S.W.2d at 345.  A party who
seeks to exclude matters from discovery on grounds that the requested
information is unduly burdensome may submit an affidavit in support of its
position.  See In re Amaya, 34 S.W.3d 354, 357 (Tex. App.–Waco
2001, orig. proceeding).  A party whose deposition has been noticed may assert
a privilege, seek protection, and assert affidavits as evidence to support the
privilege asserted.  In re Baptist Hosps. of Se. Tex., 172 S.W.3d
136, 141 (Tex. App.–Beaumont 2005, orig. proceeding).  When a plaintiff seeks
to depose an official at the highest level of corporate management, that
official may move for a protective order to prohibit the deposition, supported
by his affidavit.  Crown Cent. Petroleum Corp. v. Garcia, 904
S.W.2d 125, 128 (Tex. 1995) (orig. proceeding).  We also note that the
legislature and the supreme court have discouraged oral presentation of
testimony for pretrial matters when it can be fairly submitted in writing.  See
Michiana Easy Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 782
(Tex. 2005).

Collectively,
that body of authority supports a determination that rule 199.6 applies to
allow an affidavit in support of Sells’s attempt to avoid her deposition. 
Here, Dr. Chiu’s affidavit was based on personal knowledge and identified
enough facts to serve its purpose.  It was sufficient for the court to conclude
that, because Sells may have competency and health issues, discovery should be
suspended while those issues were investigated.  See Garcia, 734
S.W.2d at 345.  Thus, the trial court erred in failing to consider Dr. Chiu’s
affidavit.  We sustain Sells’s third issue.

 

Dr. Chiu’s
Deposition

In
her second issue, Sells contends the trial court erred in quashing the notice
of deposition of Dr. Chiu.  Drott argues that the deposition had been
“arbitrarily noticed” at a time when his counsel had multiple prior set
hearings.  Yet, he does not explain why counsel did not respond when Peacock
attempted to get an agreed date.  The trial court never reached the merits of
the motion to quash because it imposed death penalty sanctions against Sells. 
As explained above, the issue of Sells’s capacity and ability to attend a
deposition should have been addressed first.  See Tex. Prob. Code Ann. § 683(a) (Vernon
Supp. 2010); Tex. R. Civ. P.
176.7, 192.6(b).  A deposition of her treating physician would have been
relevant.  Nevertheless, because of our resolution of Appellant’s first and
third issues, we do not reach Sells’s second issue.  See Tex. R. App. P. 47.1.

 

Conclusion

The
trial court abused its discretion in assessing death penalty sanctions against
Sells and refusing to consider Dr. Chiu’s affidavit.  Accordingly, we reverse
the trial court’s judgment and remand this cause to the trial
court for proceedings consistent with this opinion.

            

                                                                                                BRIAN
HOYLE     

                                                                                                      
 Justice

Opinion delivered December 2, 2010.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J

 

 

 

 

 

(PUBLISH)